No. 25-1187,
consolidated with No. 25-1180

# In the United States Court of Appeals
# for the District of Columbia Circuit

————————

ALON REFINING KROTZ SPRINGS, INC.,

*Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Respondent.*

————————

On Petition for Review of a Final Decision of the
Environmental Protection Agency, 90 Fed. Reg. 41,829 (Aug. 27, 2025)

————————

**CORRECTED MOTION TO SEVER AND FOR
EXPEDITED BRIEFING AND CONSIDERATION**

————————

Daniel J. Feith
  *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

GLOSSARY ..........................................................................................iv

INTRODUCTION ..................................................................................1

BACKGROUND .....................................................................................2

    A.   Legal Background .....................................................................2

    B.   Factual and Procedural Background .....................................5

ARGUMENT ..........................................................................................7

I.   Delay will irreparably injure Petitioner. ....................................8

II.   EPA's action is subject to substantial challenge. ..........................10

III.   This case can easily be severed from others challenging
EPA's exemption decisions..............................................................16

CONCLUSION .....................................................................................17

ADDENDUM: Certificate as to Parties, Rulings,
and Related Cases ...................................................................Add-1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Coal. for Responsible Regul. v. EPA,*
  684 F.3d 102 (D.C. Cir. 2012) ............................................... 15

*Friends of the Inyo v. U.S. Forest Serv.,*
  103 F.4th 543 (9th Cir. 2024) ............................................... 11

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n,*
  594 U.S. 382 (2021) ................................................... 3, 4, 13

*Niz-Chavez v. Garland,*
  593 U.S. 155 (2021) ........................................................ 11

*Russello v. United States,*
  464 U.S. 16 (1983) ......................................................... 11

*Trump v. Hawaii,*
  585 U.S. 667 (2018) ........................................................ 12

## Statutes and Regulations

42 U.S.C. § 7404(a) ............................................................ 14

42 U.S.C. § 7413(b) ............................................................ 14

42 U.S.C. § 7545(o)(1)(K) ................................................ 1, 4, 11

42 U.S.C. § 7545(o)(2)(A) ...................................................... 2

42 U.S.C. § 7545(o)(2)(A)(i) .................................................. 12

42 U.S.C. § 7545(o)(2)(B)(i) ............................................... 2, 12

42 U.S.C. § 7545(o)(3)(A) ..................................................... 12

42 U.S.C. § 7545(o)(5)(A)(i) ................................................... 3

42 U.S.C. § 7545(o)(5)(D) ..................................................... 11

ii

42 U.S.C. § 7545(o)(6)(B) ........................................................ 12

42 U.S.C. § 7545(o)(9)(B)(i) ...................................................... 4

42 U.S.C. § 7545(o)(9)(B)(iii) ............................................... 4, 10

42 U.S.C. § 7607(b)(1) ...................................... 13, 14, 15, 16

40 C.F.R. § 80.1406 ................................................................. 5

40 C.F.R. §§ 80.1425–.1429 ................................................... 3

40 C.F.R. § 80.1426(a) ............................................................ 3

40 C.F.R. § 80.1427(a) ............................................................ 3

40 C.F.R. § 80.1428(c) .................................................... 3, 6, 9

40 C.F.R. § 80.1429(b) ............................................................ 3

40 C.F.R. § 80.1441(e)(2)(iii) ............................................ 4, 15

40 C.F.R. § 80.1451(f)(1)(i) ................................................. 7, 9

88 Fed. Reg. 44,468 (July 12, 2023) ...................................... 2

## Other Authorities

D.C. Cir*., Handbook of Prac. & Internal Procs.* ....................................... 7

Gov't Accountability Off., *Renewable Fuel Standard: Actions Needed to Improve Decision-Making in the Small Refinery Exemption Program* (Nov. 3, 2022), tinyurl.com/e5t2cxzy .................. 5

## GLOSSARY

EPA                         Environmental Protection Agency

RINs                        Renewable Identification Numbers

## INTRODUCTION

On August 27, 2025, the Environmental Protection Agency (EPA) denied petitioner Alon Krotz Springs Refining, Inc.'s petition for a small-refinery exemption from its 2024 obligations under the Clean Air Act's Renewable Fuel Standard. EPA's only rationale was that Krotz Springs processed too much oil to qualify as a "small refinery" in *2023*, even though it was undisputedly below the threshold in 2024 and the statute defines "small refinery" based on production volume in "*a* calendar year." 42 U.S.C. § 7545(o)(1)(K) (emphasis added). EPA's action tees up a single, pure question of law: Can "*a* calendar year" mean *two* calendar years? The answer is no.

Arriving at that answer at the ordinary appellate pace, however, would make the whole exercise academic. If this Court were to hold that EPA wrongly deemed Krotz Springs ineligible for an exemption, and EPA then grants the refinery's petition (as is likely), then, under EPA policy, Krotz Springs' only remedy would be the return of credits used to demonstrate 2024 compliance with the Renewable Fuel Standard—credits that cost Krotz Springs approximately $57 million to obtain. But if those credits are returned after March 31, 2026, they will have expired and thus be

worthless. In other words, Krotz Springs will likely have no remedy at all for EPA's wrongful eligibility determination unless this Court resolves this case quickly.

To prevent that irreparable harm and correct EPA's plain misinterpretation of the statute, the Court should sever this case and grant expedited briefing and review. EPA states that it takes no position on, and REH Company does not object to, the relief requested in this motion.

## BACKGROUND

### A.    Legal Background

**1.** The Renewable Fuel Standard requires oil refineries to blend certain percentages of renewable fuels into the transportation fuels they produce. *See* 42 U.S.C. § 7545(o)(2)(A). EPA sets those percentages on an annual, calendar-year basis. *See, e.g.*, Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes, 88 Fed. Reg. 44,468 (July 12, 2023); *see also* 42 U.S.C. § 7545(o)(2)(B)(i) (setting annual volumes of renewable fuel through 2022).

EPA implements the Renewable Fuel Standard through a system of renewable fuel credits, called "Renewable Identification Numbers" or

"RINs." *See* 42 U.S.C. § 7545(o)(5)(A)(i). Producers or importers of renewable fuel assign RINs to the renewable fuel they introduce into the United States. 40 C.F.R. § 80.1426(a). A refinery, in turn, "separates" a RIN from its associated batch of renewable fuel by blending the renewable fuel with traditional fuels such as gasoline. *Id.* § 80.1429(b). Once separated, RINs may be sold or kept to demonstrate compliance. *See id.* §§ 80.1425–.1429.

A refinery demonstrates compliance with the Renewable Fuel Standard by "retir[ing]" enough RINs to satisfy its obligations under the Standard. *Id.* § 80.1427(a)(1). "Any given refinery may therefore comply with the law thanks to its own blending efforts, the purchase of credits from someone else, or a combination of both." *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 386 (2021).

RINs have an expiration date, however. A RIN may be used to demonstrate compliance only for the calendar year in which it was generated or the following calendar year. 40 C.F.R. § 80.1427(a)(6). A RIN generated in 2024, for example, may be used to satisfy 2024 or 2025 obligations, but it is "invalid" and thus worthless for 2026 and beyond. *Id.* § 80.1428(c).

**2.** "Congress was concerned" that the Renewable Fuel Standard's requirements "could work special burdens on small refineries." *HollyFrontier*, 594 U.S. at 386. To relieve those burdens, Congress authorized small refineries to petition EPA "at any time" for an exemption from their obligations "for the reason of disproportionate economic hardship." 42 U.S.C. § 7545(o)(9)(B)(i). EPA must decide exemption petitions "not later than 90 days after … receipt." *Id.* § 7545(o)(9)(B)(iii).

The small-refinery exemption is available to any "refinery for which the average aggregate daily crude oil throughput for a calendar year (as determined by dividing the aggregate throughput for the calendar year by the number of days in the calendar year) does not exceed 75,000 barrels." *Id.* § 7545(o)(1)(K). Despite Congress tying eligibility to a refinery's output for "a" calendar year, EPA requires a refinery to be below this threshold for *two* calendar years: "In order to qualify for an extension of its small refinery exemption, a refinery must" be below the 75,000-barrel threshold "for the most recent full calendar year prior to seeking an extension *and* must be projected to" be below the threshold "for the year or years for which an exemption is sought." 40 C.F.R. § 80.1441(e)(2)(iii) (emphasis added).

### B.    Factual and Procedural Background

**1.** EPA has struggled for over a decade to meet the Clean Air Act's deadline for deciding small-refinery exemption petitions. *See* Gov't Accountability Off., *Renewable Fuel Standard: Actions Needed to Improve Decision-Making in the Small Refinery Exemption Program* 20 (Nov. 3, 2022), tinyurl.com/e5t2cxzy (EPA missed deadline in 89% of cases from 2013 to 2021). In most cases, EPA fails to make exemption decisions before the annual compliance deadline. *Id.* at 22–24.

EPA's delays put small refineries in an impossible position. Because small refineries do not know during most (or all) of the compliance year whether they will ultimately have to comply, they must either: (i) operate on the assumption they will obtain hardship relief, only to have to purchase RINs, potentially at inflated prices, if EPA later denies relief; or (ii) purchase and retire RINs for compliance, only to have EPA return the RINs at steeply diminished—if any—value if EPA later grants relief. *See id.* EPA's longstanding position is that small refineries must follow the second approach because they are obligated parties until exempted. *See* 40 C.F.R. § 80.1406. Like many small refineries, Krotz

Springs opted to purchase RINs for the 2024 compliance year. Exhibit 3, Decl. of Joseph Israel ¶ 3.

**2.** In August 2025, EPA adjudicated a batch of small-refinery-exemption petitions. Exhibit 1, EPA Aug. 2025 Decisions on Petitions for Small Refinery Exemptions, at 1. Most relevant here, EPA denied Krotz Springs' May 27, 2025 application for a small-refinery exemption for the 2024 compliance year. Exhibit 2, App'x A to EPA Aug. 2025 Decisions, at 31. Although Krotz Springs was seeking a 2024 exemption, EPA deemed Krotz Springs "ineligible" because its crude oil throughput "exceeded 75,000 barrels per day *in 2023*." *Id.* (emphasis added). EPA denied just one other application on that threshold ground. *See* Ex. 1 at 7.

EPA also announced that, for those refineries granted an exemption, it would "implement the exemptions" by "return[ing] the corresponding RINs retired by those small refineries for each compliance year." *Id.* at 20. So, had EPA granted Krotz Springs' application, the agency would have relieved Krotz Springs of the requirement to satisfy its 2024 compliance obligation. Because RINs may also be used to satisfy the following year's obligation, Krotz Springs could use some 2024 RINs to satisfy its 2025 obligations. 40 C.F.R. § 80.1428(c). But the deadline to

retire RINs to meet 2025 obligations is March 31, 2026. *See* 40 C.F.R. § 80.1451(f)(1)(i). After that, 2024 RINs will be worthless.

**3.** On September 16, 2025, Krotz Springs filed a petition for review challenging EPA's decision on its petition for a small-refinery exemption for the 2024 compliance year. Doc. Id. No. 2135532. Krotz Springs' case was assigned Case No. 25-1187. On September 18, the Court, on its own motion, consolidated Krotz Springs' petition with the petition filed by REH Company, LLC in Case No. 25-1180. Doc. Id. No. 2135540. Although REH Company's petition challenges EPA's August 2025 adjudication of small-refinery exemptions, REH Company was not deemed ineligible because of its processing volume over two years, and thus REH Company will not be addressing that aspect of EPA's decision.

## ARGUMENT

Expedition is appropriate when "delay will cause irreparable injury" and the action under review "is subject to substantial challenge." D.C. Cir*., Handbook of Prac. & Internal Procs.* 34. This case meets both criteria.

## I. Delay will irreparably injure Petitioner.

If Krotz Springs prevails here and on remand EPA grants Krotz Springs' exemption petition—as it did for every other year for which

Krotz Springs applied—EPA would refund any 2024 RINs that Krotz Springs retired. *See* Ex. 2 at 1–2, 9, 16, 25 (granting exemptions for 2018–2022). But those RINs would be worthless after March 31, 2026, and Krotz Springs will have no way to recover their value. Only expedition can avert that irreparable injury.

EPA's order lays out the relief that Krotz Springs can expect if it prevails here and receives a 2024 exemption. "When a party that has already retired RINs for a compliance year" later receives an exemption for that year, EPA will "implement the exemptio[n]" by "returning those RINs." Ex. 1 at 20–21. In other words, if Krotz Springs receives a full exemption for the 2024 compliance year, it "will have all the RINs it retired to demonstrate compliance with its [2024] obligations returned." *Id.* at 20. The refunded 2024 RINs would then "be available for trading or compliance with open … obligations." *Id.*

But that relief has fleeting value. As EPA has recognized, "the value of the RINs returned to exempted small refineries will depend to a significant degree on whether they are 'expired' or 'unexpired.'" A RIN is only "valid for compliance during the calendar year in which it was generated, or the following calendar year." 40 C.F.R. § 80.1428(c). So a 2024 RIN

may be used for compliance in 2024 or 2025. The deadline for 2025 compliance reports, and thus the last day 2024 RINs have value, is March 31, 2026. *See id.* § 1451(f)(1)(i). After that, 2024 RINs will "expir[e]" and "cannot be used for compliance purposes." *Id.* § 80.1428(c).

This means that time is of the essence. If Krotz Springs is exempted from its 2024 obligation by March 31, 2026, it will be able to use 2024 RINs—either by retiring them itself to demonstrate compliance with any 2025 obligations or by selling them to other parties. But come April 1, those RINs will be worthless. Indeed, EPA has acknowledged that "very few small refineries, if any, will have a compliance use" for expired RINs. Ex. 1 at 20. Nor does EPA intend to offer small refineries any alternative relief in that situation: the agency considered and rejected "allow[ing] small refineries to generate new, current-year vintage RINs to replace the old, expired RINs" returned to them. *Id.* at 21–22.

If Krotz Springs is entitled to a 2024 exemption, the only way to grant effectual relief and prevent irreparable injury is to expedite this case. Under a normal briefing schedule, a favorable decision (and ultimate RIN refund) would come too late for Krotz Springs to use or trade 2024 RINs before they expire. If that happened, Krotz Springs would lose

the full value of its 2024 RINs, with no way to recover the tens of millions of dollars of lost value—even though, according to the standard Congress set, it should have been exempt from compliance. To avoid this, Petitioner respectfully asks that the Court expedite briefing and argument and decide the case well enough in advance of the March 31 cutoff that EPA has time to adjudicate the petition on remand. *Cf.* 42 U.S.C. § 7545(o)(9)(B)(iii) (EPA "shall act" on small-refinery-exemption petitions within "90 days").

## II.   EPA's action is subject to substantial challenge.

EPA deemed Krotz Springs ineligible for a *2024* small-refinery exemption solely because it exceeded the 75,000-barrel throughput threshold in *2023*. There is at least a substantial basis for challenging that decision.

**1.** EPA's requirement that a refinery fall below the 75,000-barrel threshold for two consecutive years to qualify as a small refinery contravenes the plain text of the Clean Air Act. The Act defines a "small refinery" as a "refinery for which the average aggregate daily crude oil throughput for *a* calendar year … does not exceed 75,000 barrels." 42 U.S.C. § 7545(o)(1)(K) (emphasis added). "[A] calendar year" means just

that: "a" (one) "calendar year" (singular). *See, e.g.*, *Niz-Chavez v. Garland*, 593 U.S. 155, 162–63 (2021); *Friends of the Inyo v. U.S. Forest Serv.*, 103 F.4th 543, 554 (9th Cir. 2024).

Nearby statutory provisions confirm that "a calendar year" means one year, not two. Subparagraph (o)(7)(F), for example, directs EPA to modify the renewable fuel volumes in certain circumstances, including when EPA has waived the otherwise applicable volume requirement "for 2 consecutive years." Had Congress intended "a calendar year" in the small-refinery definition to mean "2 consecutive years," "it presumably would have done so expressly as it did" a few paragraphs later. *Russello v. United States*, 464 U.S. 16, 23 (1983).

Or consider subparagraph (o)(5)(D). It permits refineries to carry forward compliance deficits, so long as they make up the shortfall "in the calendar year following the year in which the renewable fuel deficit is created." If Congress wanted small-refinery status to depend on the refinery's output in a given year and the "following" year, "it knows how to say just that." *Trump v. Hawaii*, 585 U.S. 667, 692 (2018).

A broader look at the statute confirms that the Renewable Fuel Standard works on a one-year cadence with few exceptions. The statute's

central provision requires that gasoline sold "on an annual average basis" contain certain amounts of renewable fuel. 42 U.S.C. § 7545(o)(2)(A)(i). The statute goes on to set the required renewable fuel volumes for each "calendar yea[r]." *Id.* § 7545(o)(2)(B)(i). And every "calendar year," EPA (or a related agency) must make various determinations regarding compliance requirements. *See, e.g.*, *id.* § 7545(o)(3)(A) (renewable fuel percentage determinations made "each of calendar years 2005 through 2021"); *id.* § 7545(o)(6)(B) (seasonal variation adjustments made "for any calendar year"). With the whole program working on an annual cadence, it is implausible that Congress meant "a calendar year" in the small-refinery definition to in fact mean *two* calendar years.

EPA itself seemingly recognizes all of this. In defending its authority to limit exemptions to one year, EPA pointed out that the statute uses singular articles ("a" and "an") to refer to "individual" items; employs "specific duration" language to set "longer timeframe[s]"; and "creates new RFS obligations for a refinery on an annual basis." Ex. 1 at 17–18 & n.101. Yet EPA ignored those same features of the statute in deciding that "a calendar year" actually means *two* calendar years.

The Supreme Court seemingly recognized this too in *HollyFrontier*. There, in illustrating how the exemption scheme works, the Court hypothesized a scenario where (i) a refinery qualified for the exemption in 2008 and 2009; (ii) then, "in 2010, because of an increase in production capacity, the refinery loses 'small refinery' status under § 7545(o)(1)(K)"; and (iii) "[o]ne year later, production capacity falls and the refinery *moves back into small refinery status for 2011*" and "receive[s] an 'extension'" of the exemption for that year. 594 U.S. at 393 (emphasis added). That scenario is precisely the story of Krotz Springs from 2023 to 2024. Yet EPA unlawfully denies that, in 2024, Krotz Springs "may receive an 'extension.'" *Id.*

**2.** EPA will likely protest that it adopted the two-year eligibility rule in 2014, so any challenge to that rule is untimely. *See* 42 U.S.C. § 7607(b)(1) (petitions for review must be filed within 60 days of the challenged action); *see* Ex. 1 at 8. EPA is wrong for at least two reasons.

*First*, this is not a challenge to the 2014 rule but rather EPA's August 2025 decision that Krotz Springs is ineligible for the small-refinery exemption. That is the "final action of the Administrator" identified in the petition for review, which Krotz Springs undisputably filed "within

sixty days from the date notice of such … action appear[ed] in the Federal Register." 42 U.S.C. § 7607(b)(1). So Krotz Springs' petition is timely.

It is no answer that § 7607(b)(2) bars review "in civil or criminal proceedings for enforcement" of EPA actions that could have been subject to pre-enforcement review. This is not an enforcement proceeding at all. In the Clean Air Act, like most statutes, "proceedings for enforcement" are actions brought by the agency (or an aggrieved private party) against a regulated entity that has allegedly violated the statute. *See, e.g.*, 42 U.S.C. § 7413(b) (authorizing EPA to "commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty" based on a "violation of" the Clean Air Act); *id.* § 7404(a) (similar language in citizen-suit provision). But Krotz Springs has not violated the Clean Air Act and is not the defendant in any action brought based on any such violation. It simply wants EPA to deem it eligible for a small refinery exemption, consistent with the plain text of the Clean Air Act.

*Second*, even if Krotz Springs were directly challenging the 2014 rule, the Clean Air Act permits aggrieved parties to petition for review more than 60 days after promulgation "based solely on grounds arising

14

after such sixtieth day." 42 U.S.C. § 7607(b)(1). This exception "encompasses the occurrence of an event that ripens a claim," including an event that causes the petitioner's injury to "ceas[e] to be speculative." *Coal. for Responsible Regul. v. EPA*, 684 F.3d 102, 129–31 (D.C. Cir. 2012).

EPA's August 2025 decision is just such an event. Before 2023, Krotz Springs never exceeded the 75,000-barrel threshold, Ex. 3 ¶ 2, so its petition for a 2024 exemption was the first time EPA could have possibly applied the rule to Krotz Springs. But even then, Krotz Springs could only speculate as to whether EPA would invoke the two-year rule as a basis to deny an exemption. Under the rule's plain text, a refinery qualifies for an extension of its small-refiner exemption if its processing volume is (i) below the threshold "for the most recent full calendar year prior to seeking an extension," and (ii) "projected to" be below the threshold "for the year … for which an exemption is sought." 40 C.F.R. § 80.1441(e)(2)(iii). Here, both the year "prior to" which Krotz Springs "s[ought] an extension"—*i.e.*, the year before Krotz Springs applied—and "the year … for which an exemption is sought" were 2024, when Krotz Springs was undisputedly below the 75,000-barrel threshold. Until the August 2025 denial of Krotz Springs' petition, it was uncertain that EPA

would read the phrase "year prior to seeking an extension" to mean the year prior to the one "for which an exemption is sought," since EPA clearly knows how to say the latter when it means as much. *See id.* That after-arising ground makes this petition timely. 42 U.S.C. § 7607(b)(1).

## III. This case can easily be severed from others challenging EPA's exemption decisions.

Severing and expediting this case will not prejudice any other entities or create inefficiencies for the Court. Although REH Company (and likely other refineries) challenge EPA's exemption decisions on other grounds, and those petitions will likely be consolidated, this case presents only a single, distinct question of law about the meaning of "a calendar year" in the Clean Air Act's definition of "small refinery." The answer affects just two refineries—Krotz Springs and one other, which is not REH Company—so the Court can comfortably sever and expedite resolution of this case without prejudicing petitioners challenging other aspects of EPA's decision. Furthermore, because answering the question presented does not depend on the record before EPA, a panel can efficiently resolve this case without duplicating the work of the panel adjudicating the other petitions.

## CONCLUSION

The Court should sever this case from Case No. 25-1180 and grant expedited briefing and consideration on a schedule that permits a decision by EPA on remand before March 31, 2026. Petitioner asks that the Court enter the following briefing and argument schedule:

Petitioner's Brief and Joint Appendix – October 31, 2025

Respondent's Answering Brief – November 26, 2025

Respondent-Intervenors' Brief (if any) – December 8, 2025

Petitioners' Reply Brief – December 19, 2025

Oral Argument – January/February 2026

Dated:  September 25, 2025          Respectfully submitted,

/s/ *Daniel J. Feith*
Daniel J. Feith
   *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner Alon*
*Refining Krotz Springs, Inc.*

18

## CERTIFICATE OF COMPLIANCE

This motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. The motion complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,329 words, excluding the sections listed in Rule 32(f).

*/s/ Daniel J. Feith*
Daniel J. Feith

## CERTIFICATE OF SERVICE

I certify that on September 25, 2025, a copy of this document was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.


*/s/ Daniel J. Feith*
Daniel J. Feith

## ADDENDUM

### PROVISIONAL CERTIFICATE AS TO
### PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1), Petitioner Alon Refining Krotz Springs, Inc. hereby certifies the following as to the parties, rulings, and related proceedings in this case:

**Parties and *Amici*.** This case involves a petition for review filed directly in this Court. Accordingly, the requirement of Circuit Rule 28(a)(1) to list the parties, intervenors, and *amici* that appeared below does not apply. In this Court, Petitioner is Alon Refining Krotz Springs, Inc.; Respondent is the U.S. Environmental Protection Agency; and at this time, counsel is unaware of any party that anticipates moving to participate as an intervenor or *amicus curiae*.

**Ruling Under Review**. The ruling under review is EPA's August 22, 2025 final decision denying Petitioner Alon Refining Krotz Springs' application for an exemption from its compliance obligations under the Clean Air Act's Renewable Fuel Standard for the 2024 compliance year. EPA published notice of its decision in the Federal Register on August 27, 2025, at 90 Fed. Reg. 41829.

**Related Cases.** *REH Company, LLC v. EPA*, No. 25-1180 (D.C. Cir.), involves a challenge EPA's August 22, 2025 adjudication of a different small refinery's application for exemptions from its Renewable Fuel Standard compliance obligations. At this time, counsel is unaware of any other related cases within the meaning of Circuit Rule 28(a)(1)(C).

Dated:  September 25, 2025

Respectfully submitted,

/s/ *Daniel J. Feith*
Daniel J. Feith
  *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner Alon
Refining Krotz Springs, Inc.*