NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-1180 & Consolidated Cases

―――――――――

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――

ALON REFINING KROTZ SPRINGS, INC.,
*Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,
*Respondent*.

―――――――――

Petition for Review of Actions of the U.S. Environmental Protection
Agency

―――――――――

**EPA'S COMBINED MOTION TO DISMISS FOR LACK OF
JURISDICTION AND RESPONSE TO PETITIONER'S MOTION
TO SEVER AND FOR EXPEDITED BRIEFING**

―――――――――

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

Of Counsel:

SAMUEL STRICKLAND
*Attorney*
U.S. Environmental Protection
Agency

REDDING COFER CATES
ALEXANDER M. PURPURO
Environment & Natural Resources Div.
U.S. Department of Justice
Post Office Box 7611
Washington, D.C. 20044
(202) 353-5561 (Cates)
(202) 353-5230 (Purpuro)
redding.cates@usdoj.gov
alexander.purpuro@usdoj.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

All parties appearing in this court are listed in the Brief for Petitioner.  Since Petitioner filed its motion, Growth Energy (ECF No. 2137689) and Renewable Fuels Association (ECF No. 2140424) have filed motions to intervene.

### B.    Rulings Under Review

References to the rulings at issue appear in the Brief for Petitioner.

### C.    Related Cases

There are related cases within the meaning of Circuit Rule 28(a)(1)(C).  This Court has consolidated several challenges to the August 25 Decisions under lead case *REH Company, LLC v. EPA,* No. 25-1180 (D.C. Cir.), including:  *Calumet Shreveport Refining, LLC v. EPA*, No. 25-1195 (D.C. Cir.); *Calumet Montana Refining, LLC v. EPA*, No. 25-1196 (D.C. Cir.); *HF Sinclair Refining & Marketing LLC v. EPA*, No. 25-1197 (D.C. Cir)  Additionally, two cases are pending consolidation: *REH Company, LCC v. EPA*, No. 24-1310 (D.C. Cir.); *REH Company, LCC v. EPA*, No. 24-1311 (D.C. Cir.).

/s/ *Redding Cofer Cates*
Redding Cofer Cates

Counsel for Respondent

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ v

GLOSSARY ............................................................................................. vii

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 2

I.    Statutory and regulatory background ............................................. 2

      A.    The RFS program ................................................................... 2

      B.    The small refinery exemption ............................................... 3

II.   Agency proceedings ........................................................................ 6

      A.    EPA's 2025 Decisions on petitions for RFS small
            refinery exemptions .............................................................. 6

      B.    Krotz Springs' deadline to comply with its 2025
            Renewable Fuel Standard obligations ................................. 7

ARGUMENT .............................................................................................. 9

I.    The Court Should Dismiss this Action for Lack of
      Jurisdiction ...................................................................................... 9

            1.    Krotz Springs' challenge to the "two year"
                  eligibility criteria in the 2014 Eligibility
                  Regulation is untimely. ............................................... 11

            2.    Krotz Springs "after arising" challenge to
                  the 2014 Eligibility Regulation fails. ......................... 13

II.   In the Alternative, Krotz Springs' Motion to Expedite
      should be denied. ........................................................................... 16

      A.    Krotz Springs faces no irreparable injury .......................... 16

B.    Krotz Springs brings no substantial challenge to EPA's August 2025 Decisions. ......................................................19

III.    The Court should decline to sever this case. .................................19

IV.    The Court should reject Krotz Springs' proposed expedited schedule. ........................................................................20

CONCLUSION ..........................................................................................20

CERTIFICATE OF COMPLIANCE..........................................................22

iv

# TABLE OF AUTHORITIES

## CASES

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
  705 F.3d 453 (D.C. Cir. 2013) ....................................................... 14, 15

*Bowles v. Russell,*
  551 U.S. 205 (2007) ........................................................................ 11

*Growth Energy v. EPA,*
  5 F.4th 1 (D.C. Cir. 2021) .............................................................. 10

*Med. Waste Inst. & Energy Recovery Council v. EPA,*
  645 F.3d 420 (D.C. Cir. 2011) ..................................................... 11, 14

*Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.,*
  158 F.3d 135 (D.C. Cir. 1998) ........................................................ 14

*Sierra Club v. EPA,*
  895 F.3d 1 (D.C. Cir. 2018) ............................................................ 11

*Strange ex rel.* Strange *v. Islamic Republic of Iran,*
  964 F.3d 1190 (D.C. Cir. 2020) ...................................................... 11

## STATUTES

42 U.S.C. § 7545(o)(1)(K) ................................................................ 3, 5

42 U.S.C. § 7545(o)(2)-(3) ................................................................. 3

42 U.S.C. § 7545(o)(2)(B) ................................................................. 2

42 U.S.C. § 7545(o)(5) ...................................................................... 3

42 U.S.C. § 7545(o)(9) ...................................................................... 3

42 U.S.C. § 7545(o)(9)(A)(i) .............................................................. 4

42 U.S.C. § 7545(o)(9)(A)(ii)(I) ......................................................... 4

42 U.S.C. § 7545(o)(9)(A)(ii)(II) ........................................................ 4

42 U.S.C. § 7545(o)(9)(B)(i) ...................................................4

42 U.S.C. § 7545(o)(9)(B)(ii) ..................................................4

42 U.S.C. § 7607(b)(1)......................................................10, 13

Pub. L. No. 109-58, 119 Stat. 594 (2005) ....................................2

Pub. L. No. 110-140, 121 Stat. 1492 (2007) ................................2

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 80.1406 ...............................................................3

40 C.F.R. §§ 80.1425–80.1427 ................................................3

40 C.F.R. §§ 80.1427–80.1429 ................................................3

40 C.F.R. § 80.1441(a)(1) .......................................................5

40 C.F.R. § 80.1441(e)(2) .......................................................4

40 C.F.R. § 80.1441(e)(2)(iii) .............................5, 7, 10, 15

40 C.F.R. § 80.1451(f) ............................................................7

40 C.F.R. § 80.1451(f)(1)(i)(A) ...........................................8, 17

**FEDERAL REGISTER**

79 Fed. Reg. 42128 (July 18, 2014) ..................................5, 7, 15

90 Fed. Reg. 41829 (Aug. 27, 2025)..........................................6

vi

## GLOSSARY

| | |
|---|---|
| CAA | Clean Air Act |
| EPA | Environmental Protection Agency |
| RFS | Renewable Fuel Standard |
| RINs | Renewable Identification Numbers |

vii

**INTRODUCTION**

The Court should deny Petitioner Alon Refining Krotz Springs, Inc.'s ("Krotz Springs") Motion to Sever and for Expedited Briefing and Consideration and should instead dismiss this case for lack of jurisdiction. The sole challenge Krotz Springs raises comes a full *decade* too late. Its motion makes clear that it challenges only a regulation EPA adopted in 2014 and has consistently applied over the intervening decade. Because the Clean Air Act exclusively authorizes challenges to rules in the 60-day period following their publication, or within 60 days of an after-arising event, and because the mere application of the regulation to Krotz Springs cannot constitute an after-arising event, the Court should dismiss this case.

But in any event, Krotz Springs has failed to demonstrate any need for severance and expedited briefing. Krotz Springs has not identified any present irreparable injury it will suffer under this Court's normal briefing schedule. Krotz Springs also has not demonstrated that it has brought a substantial challenge to EPA's "August 2025 Decisions on Petitions for RFS Small Refinery Exemptions," notice of which was published in the Federal Register. Accordingly, Krotz

1

Springs is not entitled to expedited briefing and consideration. Finally, even if this Court is inclined to deny dismissal and grant expedited briefing, the schedule proposed by Krotz Springs is unworkable, and this Court should decline to impose it.

## BACKGROUND

### I. Statutory and regulatory background

#### A. The RFS program

In 2005 and again in 2007, Congress amended the Clean Air Act ("CAA") to establish and revise the Renewable Fuel Standard ("RFS") program. Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594 (2005); Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492 (2007). Congress established increasing target volumes of renewable fuels for blending into transportation fuel each year until 2022, with EPA setting the volumes thereafter. 42 U.S.C. § 7545(o)(2)(B). For each year, EPA issues a rule setting the "applicable volume" for each fuel type and converting those into "percentage standards" that each individual obligated party—including refiners and importers of transportation fuel—uses to determine the amount of renewable fuel it must introduce into the transportation fuel market.

*Id.* § 7545(o)(2)-(3); 40 C.F.R. § 80.1406.  The RFS volumes and percentage standards for 2026 have not yet been issued.

Refiners comply with the RFS program by obtaining and "retir[ing]" a sufficient number of compliance credits, called Renewable Identification Numbers ("RINs"), that correspond to particular quantities of renewable fuel, in an annual compliance demonstration. 40 C.F.R. §§ 80.1425–80.1427; *see* 42 U.S.C. § 7545(o)(5) (requiring EPA to promulgate regulations creating a credit system).  A refiner can satisfy its obligations by blending the required quantity of renewable fuels into gasoline and diesel or by purchasing a sufficient number of RINs from other entities.  40 C.F.R. §§ 80.1427–80.1429.

## B.    The small refinery exemption

Congress created an exemption from the RFS program for certain obligated parties that qualify as "small refineries," 42 U.S.C. § 7545(o)(9), which, by definition, are those refineries with an "average aggregate daily crude oil throughput for a calendar year … [that] does not exceed 75,000 barrels" *id.* § (o)(1)(K).  The exemption has a three-tiered structure.  First, Congress granted all small refineries a

temporary blanket exemption from the requirements of the RFS program until 2011.  *Id.* § 7545(o)(9)(A)(i).

Second, Congress directed DOE to conduct a study "to determine whether compliance with the requirements of [the RFS program] would impose a disproportionate economic hardship on small refineries."  *Id.* § 7545(o)(9)(A)(ii)(I).  For any small refinery that DOE determined would be subject to disproportionate economic hardship, Congress directed EPA to "extend the exemption under clause (i) for the small refinery for a period of not less than 2 additional years."  *Id.* § 7545(o)(9)(A)(ii)(II).

Third, Congress provided that a small refinery "may at any time petition the [EPA] Administrator for an extension of the exemption under subparagraph (A) for the reason of disproportionate economic hardship."  *Id.* § 7545(o)(9)(B)(i); 40 C.F.R. § 80.1441(e)(2) ("A refiner may petition EPA for an extension of its small refinery exemption, based on disproportionate economic hardship, at any time.").  In considering such a petition, "the Administrator, in consultation with the Secretary of Energy, shall consider the findings of the study under subparagraph (A)(ii) and other economic factors."  42 U.S.C. § 7545(o)(9)(B)(ii).

Thus, in 2010, when EPA initially adopted regulations implementing the small refinery exemption, EPA regarded as eligible for hardship relief only those refineries that qualified for, and thus received, the blanket first-tier statutory temporary exemption by not exceeding the 75,000-barrel-per-day crude oil throughput threshold "for a calendar year," 42 U.S.C. § 7545(o)(1)(K), of 2006. *See* 40 C.F.R. § 80.1441(a)(1) (requiring throughput threshold for 2006).

In 2014, EPA amended its regulations to determine a refinery's eligibility based on its crude oil throughput during the compliance year for which it desired an exemption and the year immediately preceding the desired exemption period. *See* 40 C.F.R. § 80.1441(e)(2)(iii) ("2014 Eligibility Regulation"). The preamble to the 2014 Eligibility Regulation explains: "The final rule places the focus on the time period immediately prior to and during the desired exemption period, which we believe is most appropriate given the objectives of the provision." 79 Fed. Reg. 42128, 42152 (July 18, 2014).

## II. Agency proceedings

### A. EPA's 2025 Decisions on petitions for RFS small refinery exemptions

On August 27, 2025, EPA published notice of the "August 2025 Decisions on Petitions for RFS Small Refinery Exemptions," ("August 2025 Decisions") in the Federal Register. *See* 90 Fed. Reg. 41829 (Aug. 27, 2025).[1] In the August 2025 Decisions, EPA acted on "175 individual small refinery exemption ("SRE") petitions from 38 refineries seeking an exemption from their Renewable Fuel Standard ("RFS") obligations for the 2016-2024 compliance years." August 2025 Decisions at 1.

As is relevant to Krotz Springs, "EPA denied Krotz Springs' May 27, 2025 application for a small-refinery exemption . . . EPA deemed Krotz Springs ineligible because its crude oil throughput exceeded 75,000 barrels per day in 2023." Pet'r's Mot. at 6 (internal quotes and emphasis removed). EPA applied the 2014 Eligibility Regulation, which requires a refinery to "meet the definition of a small refinery (*i.e.* its average aggregate daily crude oil throughput does not exceed 75,000 bpd) in the calendar year for which the refinery is seeking an exemption

---

[1] The August 2025 Decisions document is available here: https://www.epa.gov/system/files/documents/2025-08/420r25010.pdf.

and the prior year." August 2025 Decisions at 7; *see also* 40 C.F.R. § 80.1441(e)(2)(iii); 79 Fed. Reg. at 42152.

EPA noted that "two refineries each submitted a letter suggesting that EPA's regulations are contrary to the statute or improperly interpreted." August 2025 Decisions at 7. EPA disagreed with these assertions, noting that "EPA promulgated the regulations imposing the 75,000 bpd threshold for the year for which a refinery is seeking an exemption and the prior year through rulemaking in 2014, no parties challenged EPA's regulations at that time, and those regulations can no longer be challenged." *Id.* at 8.

## B. Krotz Springs' deadline to comply with its 2025 Renewable Fuel Standard obligations

EPA regulations peg the deadline for annual compliance reports to the effective date of the following year's standards. 40 C.F.R. § 80.1451(f). Annual compliance reports must be submitted "by whichever of the following dates is latest: (1) March 31 of the subsequent calendar year [or] (2) [t]he next quarterly reporting deadline . . . after the date the subsequent compliance year's renewable fuel standards become effective [or] (3) [t]he next quarterly reporting deadline . . . after the annual compliance reporting deadline for the

7

prior compliance year." *Id.* § 80.1451(f)(1)(i)(A). Thus, in this case, until EPA issues the 2026 standards and they become effective, Krotz Springs' deadline for its 2025 compliance report has not been set.

EPA published an initial notice of proposed rulemaking to set 2026 volumes and percentage standards on June 17, 2025, but then published a supplemental proposal on September 18, 2025. Declaration of Aaron Szabo, Ex. A ¶¶ 15-18. Because of the extensive, statutorily mandated requirements EPA must complete before it can finalize the rulemaking, including holding the comment period open for 30 days after a public hearing—which was held on October 1, 2025, as well as the time necessary to respond to the frequently voluminous comments EPA receives on these rules, there currently is no date-certain by which the final rule will be completed. *Id.* ¶ 21. Moreover, the lapse in appropriations further complicates any estimation of this timeline. *Id.* ¶ 22. Therefore, EPA's website currently lists the deadline for 2025 compliance reports to be the "[n]ext quarterly reporting deadline after the 2026 standards are effective."[2]

---

[2] *See* Table Row "2025" for Column "Compliance Reporting Deadline" at: https://www.epa.gov/fuels-registration-reporting-and-compliance-help/reporting-deadlines-fuel-programs.

8

EPA is presently working to complete the rulemaking finalizing the applicable volumes and standards for the 2026 and 2027 compliance years and adjusting the cellulosic biofuel volume and standard for the 2025 compliance year. As of October 16, 2025, EPA anticipates that it "will be able to collect and review comments, brief management, work through policy issues, draft a final rulemaking, and respond to all significant comments on the action and sign the final rule in winter 2025-2026." *Id.* ⁋ 21.

## ARGUMENT

## I. The Court Should Dismiss this Action for Lack of Jurisdiction.

Krotz Springs made clear in its motion to expedite and sever that its sole claim is a challenge to the 2014 Eligibility Regulation setting the criteria small refineries must establish to qualify for small refinery exemptions. But the Clean Air Act precludes any such challenge at this late date and removes this Court's jurisdiction to hear it.

Krotz Springs challenges the legality of EPA's 2014 Eligibility Regulation that requires any small refinery seeking an exemption to "be below the 75,000-barrel threshold 'for the most recent full calendar year prior to seeking an extension *and* must be projected to be below the

9

threshold 'for the year or years for which an exemption is sought.'"
Pet'r's Mot. at 4 (emphasis in original) (quoting 40 C.F.R. §
80.1441(e)(2)(iii)). It claims that this 2014 Eligibility Regulation,
requiring "a refinery [to] fall below the 75,000-barrel threshold for two
consecutive years to qualify as a small refinery contravenes the plain
text of the Clean Air Act." *Id.* at 10. By its own words, Krotz Springs
concedes that the "single, pure question of law" presented in its
challenge is its challenge to EPA's 2014 Eligibility Regulation. *Id.* at 1.
In so arguing, Krotz Springs concedes that it has brought this case too
late.

Whatever its merits, Petitioners' attack on an eleven-year-old
regulation is jurisdictionally time-barred, and its petition must be
dismissed. *See Growth Energy v. EPA*, 5 F.4th 1, 22-23 (D.C. Cir. 2021)
(rejecting an untimely challenge to EPA's "longstanding policy"
regarding exported renewable fuel under the RFS program because the
issue had not been reopened and redecided in the challenged rule).
Judicial challenges to CAA rulemakings must be filed within 60 days of
notice of the final rule appearing in the Federal Register. 42 U.S.C. §
7607(b)(1). Under 42 U.S.C. § 7607(b)(1), this Court "lack[s] jurisdiction

to review a claim unless the petition for review is brought within sixty days of the challenged action appearing in the Federal Register." *Sierra Club v. EPA*, 895 F.3d 1, 16 (D.C. Cir. 2018).   And the Court "has no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007); *Strange ex rel. Strange v. Islamic Republic of Iran*, 964 F.3d 1190, 1198–202 (D.C. Cir. 2020); *Med. Waste Inst. & Energy Recovery Council v. EPA*, 645 F.3d 420, 427 (D.C. Cir. 2011) (a court is "powerless" to resolve a claim filed after a jurisdictional deadline).[3]  Krotz Springs *only* could have challenged EPA's 2014 Eligibility Regulation had it done so over a decade ago.

Krotz Springs itself seemingly recognizes all of this, and its attempts to justify its tardy challenge fail.

### 1.    Krotz Springs' challenge to the "two year" eligibility criteria in the 2014 Eligibility Regulation is untimely.

Krotz Springs claims that it *actually* challenges EPA's August 2025 Decisions, Pet'r's Mot. at 13, but its motion's entire substantive

---

[3] Although this Court has repeatedly held that the CAA's 60-day bar for judicial review is jurisdictional, the same result would obtain here even if this were not the case.  Even non-jurisdictional claims processing rules must be applied strictly, and here Krotz Springs has provided no basis to justify tolling of the 60-day period.

argument belies—and even directly contradicts—this empty claim. Krotz Springs frames the *"single"* salient legal issue in this case as whether EPA's 2014 Eligibility Regulation complies with the CAA. *See* Pet'r's Mot. at 1-2. Its sole challenge hinges on EPA's determination that it must fall below the 75,000-barrel-per-day crude oil threshold in *both* the year for which it requests an exemption and the prior year. *Id.* Tellingly, Krotz Springs never argues that EPA misinterpreted or misapplied its 2014 Eligibility Regulation *to Krotz Springs* when it issued its 2025 decision finding Krotz Springs ineligible. *See id.* Instead, it seeks redress here for "EPA's plain misinterpretation of the *statute*," not the 2014 Eligibility Regulation. *Id.* at 2 (emphasis added), *see also* 10-12 ("the *Act* defines . . . [n]early *statutory* provisions confirm . . . [a] broader look at the *statute* . . . it is implausible that *Congress* meant 'a calendar year' in the small-refinery definition to in fact mean *two* calendar years.") (emphasis added).

Indeed, Krotz Springs identifies no defect in the 2025 decision itself. *See id.* at 6. Moreover, EPA could not have applied its 2014 Eligibility Regulation differently in its August 2025 Decisions, and Krotz Springs does not argue otherwise. *See id.* at 1-17. Belying the

12

true nature of its claim, Krotz Springs goes so far as to assert that "answering the question presented does not depend on the record before EPA." *Id.* at 16. How can this be, if Krotz Springs is truly challenging the August 2025 Decisions? A challenge to the August 2025 Decisions necessarily *would* entail an examination of the factual record before EPA when it applied the 2014 Eligibility Regulation to Krotz Springs' application for a 2024 exemption. Krotz Springs' admission that it does not require a factual record reveals the truth: it exclusively seeks to challenge the propriety of the 2014 Eligibility Regulation. Krotz Springs' actual quarrel is *only* with the 2014 regulation. *Id.* at 1.

> **2. Krotz Springs "after arising" challenge to the 2014 Eligibility Regulation fails.**

Krotz Springs asserts—hypothetically, apparently—that EPA's application of the 2014 Eligibility Regulation in its 2025 decision constitutes "after arising" grounds for Krotz Springs to challenge whether the 2014 Eligibility Regulation is lawful. Pet'r's Mot. at 15.

The CAA allows one exception to its 60-day jurisdictional deadline: "if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise." 42 U.S.C. § 7607(b)(1).

13

But the mere application of an already-existing regulation to a particular regulated entity does not provide "after arising" grounds for that entity to untimely challenge a well-established rule.  A new round of judicial review does not become available when EPA "in a later rulemaking restates the policy or otherwise addresses the issue again without altering the original decision." *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 141 (D.C. Cir. 1998).  Nor, more importantly here, does the application of a longstanding regulation to new facts reset the long-since-passed jurisdictional deadline to challenge that regulation.  *See Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 458 (D.C. Cir. 2013) (rejecting argument that the "application of a regulation in a SIP approval" could "constitute an after-arising ground" to challenge the regulation); *Med. Waste Inst.*, 645 F.3d at 427 (no jurisdiction to consider challenge to old regulation that EPA had applied to new facts in the regulation currently being challenged).

Krotz Springs has been on notice for a decade that EPA interprets the 2014 Eligibility Regulation to require a refinery to demonstrate two consecutive years of crude oil throughput below the 75,000 bpd

threshold to be eligible for an exemption as a small refinery. The preamble to the 2014 Eligibility Regulation clearly states: "The final rule places the focus on the time period immediately prior to and during the desired exemption period, which we believe is most appropriate given the objectives of the provision." 79 Fed. Reg. at 42152. And the regulatory text requires a refinery to meet the definition "for the year or years for which an exemption is sought," and "for the most recent full calendar year prior to seeking an extension." 40 C.F.R. § 80.1441(e)(2)(iii). Thus, Krotz Springs' claim that it "could only speculate" that EPA would "invoke the two-year rule" is simply not credible. *See* Pet'r's Mot. at 15. A petitioner cannot sit on its hands when an agency promulgates a rule it finds objectionable and wait a decade until such rule is correctly applied to it to challenge that rule. *See Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 458.[4] This Court should not allow Krotz Springs to bring this untimely challenge and should dismiss its petition.

---

[4] Krotz Springs' citation to Section 7607(b)(2) is a red herring. Pet.'s Br. at 14. EPA takes Krotz Springs at its word that it is not challenging EPA's action under Section 7607(b)(2).

15

Having failed to timely challenge the 2014 Eligibility Regulation, and mounting no actual attack on the August 2025 Decisions, Krotz Springs has shown that its petition must be dismissed.

## II. In the Alternative, Krotz Springs' Motion to Expedite should be denied.

In order to obtain expedited briefing, Krotz Springs must show that "delay will cause irreparable injury" and that the EPA decision to which it objects is "subject to substantial challenge." D.C. Cir., *Handbook of Prac. & Internal Procs.* 34. It has shown neither.

### A. Krotz Springs faces no irreparable injury.

Krotz Springs incorrectly asserts that its "RINs will be worthless" after "March 31, 2026." Pet'r's Mot. at 7. In fact, that compliance deadline presently does not exist. Moreover, when the 2025 compliance deadline is established, it may in fact be later than March 31, 2026— potentially much later. Therefore, Krotz Springs cannot show that a normal briefing schedule would cause it irreparable injury, and its motion to expedite briefing and consideration should be denied.

Krotz Springs' request for expedited briefing wholly rests on a false factual assertion: "The deadline for 2025 compliance reports, and thus the last day 2024 RINs have value, is March 31, 2026." *Id.* at 9.

16

This is simply untrue.  EPA regulations state that the annual compliance reports must be submitted "by whichever of the following dates is latest: (1) March 31 of the subsequent calendar year [or] (2) [t]he next quarterly reporting deadline . . . after the date the subsequent compliance year's renewable standards become effective [or] (3) [t]he next quarterly reporting deadline . . . after the annual compliance reporting deadline for the prior compliance year."  40 C.F.R. § 80.1451(f)(1)(i)(A).

EPA published an initial notice of proposed rulemaking setting 2026 volumes and percentage standards on June 17, 2025, but then published a supplemental proposal on September 18, 2025.  Ex. A ¶¶ 15, 18.  Because of the extensive, statutorily mandated requirements EPA must complete before it can finalize the rulemaking, including holding a new public hearing on the supplemental proposal on October 1, 2025, and holding the comment period open for 30 days after that hearing, as well as the time necessary to respond to the frequently voluminous comments EPA receives on these rules—there currently is no date-certain by which the final rule will be completed.  *Id.* ¶ 21.  Moreover,

the lapse in appropriations further complicates any estimation of this timeline.  *Id.* ¶ 22.

　　As such, EPA's website currently lists the deadline for 2025 compliance reports to be the "[n]ext quarterly reporting deadline after the 2026 standards are effective."[5]  Until EPA issues the 2026 standards and they become effective, the deadline for 2025 compliance reports has not been set.  Thus, if EPA issues the 2026 standards in late January or February of 2026, and they become effective after March 31, 2026, the 2025 compliance date would be June 1, 2026.  *Id.* ¶ 24.  If the 2026 standards are not issued before the end of March 2026, and do not become effective until after June 1, 2026, the 2025 compliance deadline would be September 1, 2026, or even later.  Any of these deadlines would afford Krotz Springs ample time to receive a decision under this Court's normal briefing and decision timelines.  Thus, it cannot show that it is entitled to expedited briefing.

---

[5] *See* Table Row "2025" for Column "Compliance Reporting Deadline" at: https://www.epa.gov/fuels-registration-reporting-and-compliance-help/reporting-deadlines-fuel-programs.

**B.    Krotz Springs brings no substantial challenge to EPA's August 2025 Decisions.**

Krotz Springs identifies no challenge whatsoever to the substance of EPA's decision on its small refinery exemption petition; it exclusively asserts an untimely challenge to the legality of EPA's 2014 Eligibility Regulation.  As explained in Pt.I, *supra*, Krotz Springs' challenge to the regulation must be dismissed.  And because it has failed to identify *any* other challenge to EPA's decision, much less any *substantial* challenge, Krotz Springs has failed to demonstrate any need for expedited briefing (or any briefing at all).

**III.   The Court should decline to sever this case.**

Because Krotz Springs' petition is untimely and should be dismissed, severing the action from the other consolidated petitions would be pointless.  Krotz Springs should not have a separate, accelerated briefing schedule for three reasons.  First, it is not entitled to expedited briefing.  *Supra* § II.  Second, this case should not proceed to merits briefing at all because this Court lacks jurisdiction over Krotz Springs' petition.  *Supra* § I.  Third, severance would accomplish nothing and waste this Court's resources.  According to its usual practice, this Court has consolidated all petitions challenging the

19

August 2025 Decisions in the interest of judicial efficiency, and severance would unjustifiably undermine that interest.

## IV.    The Court should reject Krotz Springs' proposed expedited schedule.

Even if this Court is inclined to grant Krotz Springs a separate and expedited schedule, it should not order the schedule Krotz Springs has proposed.  Instead, the Court should permit Krotz Springs its allotted time to oppose this motion to dismiss and EPA to reply.  Once the Court has resolved the motion to dismiss, the parties will propose a briefing schedule, if appropriate, for any remaining issues.

## CONCLUSION

For the foregoing reasons, Krotz Springs' motion to sever and for an expedited briefing schedule should be denied, and EPA's motion to dismiss should be granted.

Dated: October 16, 2025                    Respectfully Submitted,

20

/s/ *Redding Cofer Cates*
ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

REDDING COFER CATES
ALEXANDER M. PURPURO
Environment and Natural Resources
Division
U.S. Department of Justice
Post Office Box 7611
Washington, D.C. 20044
(202) 353-5561 (Cates)
(202) 353-5230 (Purpuro)
redding.cates@usdoj.gov
alexander.purpuro@usdoj.gov

Of Counsel:
SAMUEL STRICKLAND
*Attorneys*
U.S. Environmental Protection
Agency

DJ No. 90-5-2-3-23058

21

## CERTIFICATE OF COMPLIANCE

  1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 3,753 words.

  2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Redding Cofer Cates*
Redding Cofer Cates

Counsel for Respondent