NOT YET SCHEDULED FOR ORAL ARGUMENT

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| REH COMPANY, LLC, et al.,<br><br>    *Petitioners,*<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>    *Respondent.* | Case No. 25-1180 and consolidated cases |

**RENEWABLE FUELS ASSOCIATION'S REPLY
IN SUPPORT OF MOTION TO INTERVENE**

The Renewable Fuels Association ("RFA") respectfully submits this reply to the joint response in opposition filed by Petitioners Alon Refining Krotz Springs, Inc., HF Sinclair Refining & Marketing LLC, and HF Sinclair Parco Refining LLC. ECF #2142347.

**ARGUMENT**

Petitioners cling to a single case that is out of step with the standing precedents of the Supreme Court and this Circuit in a desperate attempt to keep RFA out of this case. In doing so, Petitioners ignore that this Court has routinely acknowledged that renewable fuels producers, like RFA's members, are interested

parties with respect to EPA's implementation of the Renewable Fuels Standard ("RFS") and the harm caused to such producers when EPA grants small refinery exemptions ("SREs") like the ones at issue in this case.

Contrary to Petitioners' assertions, RFA has more than adequately demonstrated the harm that will be imposed on its ethanol producing members should this Court grant the Petitioners' requested relief. This Court should therefore reject Petitioners' arguments and grant RFA's motion.

### I. RFA Need Not Establish Article III Standing

The Supreme Court has on no less than three recent occasions held that an intervenor of right must demonstrate Article III standing only if it pursues relief that is broader than or different from the party invoking the court's jurisdiction. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (noting that, because an intervenor was not "invoking a court's jurisdiction" in the proceedings below, where it appeared as an intervenor in support of defendants and later as an appellee, "it was not previously incumbent on the [intervenor] to demonstrate its standing"); *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right. Thus, at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."); *see also Little*

*Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) (stating that the appellate court "erred by inquiring into [the intervenor's] independent Article III standing" where the intervenor sought the same relief as the defendant-appellant).

Although this Court has required defendant-intervenors to demonstrate Article III standing in order to intervene as a matter of right—even when defendant-intervenors seek the same relief as existing defendants—such prior holdings[1] are plainly inconsistent with the Supreme Court's recent holdings, and this panel may determine that those prior holdings have been superseded without resorting to *en banc* endorsement. *See In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003) (citing *In re Sealed Case No. 97–3112,* 181 F.3d 128, 143-44 (D.C. Cir. 1999) ("a three-judge panel may always ... determine ... that a prior holding has been superseded, and hence is no longer valid as precedent without resorting to *en banc* endorsement.") (internal citations and quotations omitted); *see also Dellums v. U.S. Nuclear Regul. Comm'n,* 863 F.2d 968, 978 n.11 (D.C. Cir. 1988) (rejecting the notion that *en banc* review is required to "formally bur[y]" circuit precedent that is "out of step" with intervening Supreme Court precedent because "it is black letter

---

[1] *See, e.g.*, *Deutsche Bank National Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013).

3

law that a circuit precedent eviscerated by subsequent Supreme Court cases is no longer binding on a court of appeals") (internal citations omitted).

## II. RFA Nonetheless Satisfies Rule 24(a)(2) and Standing Requirements

Even if this Court does not resolve its inconsistency with the Supreme Court's decisions in *Bethune-Hill*, *Town of Chester*, and *Little Sisters of the Poor*, RFA has demonstrated that granting the relief sought by Petitioners would cause its members economic injury that is more than sufficient to establish standing.

### A. The Economic Injury to RFA's Members is Straightforward

As both the Supreme Court and this Circuit recognize, parties can establish standing based on "common sense inferences" and "commonsense economic principles." *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121 (2025); *see also Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 (D.C. Cir. 2017) ("When performing that inherently imprecise task of predicting or speculating about causal effects [in standing analysis], common sense can be a useful tool."). And as the Supreme Court recently admonished, "Courts should not make standing law more complicated than it needs to be." *Diamond Alternative*, 145 S. Ct. at 2142 (internal citation omitted). Rather, courts simply "do their best based on the complaint and declarations to assess whether the plaintiff's assertions suffice to show the elements of standing." *Carpenters Indus. Council*, 854 F.3d at 5.

4

Contrary to Petitioners' assertions, RFA has demonstrated that its members will suffer economic harm should this Court grant Petitioners' requested relief. As explained in RFA's Motion, if the Court were to vacate any of the Petitioners' full or partial denials, EPA would retroactively relieve those refineries from their RFS obligations by returning the refineries' RINs, which could be used for compliance. Motion at 8; Cooper Decl. ¶12; Richman Decl. ¶¶8, 10. Similarly, if the Court were to vacate EPA's decision to return old, expired RINs for 2018-2022, EPA would have to issue new, valid RINs that could also be used for RFS compliance. *Id.* Basic economic principles of supply and demand demonstrate that if a significant number of new RINs enter the market, the price of RINs will go down, which in turn drives down demand for renewable fuel because obligated parties can comply with their RFS obligations by purchasing low-cost RINs instead of blending physical volumes of renewable fuel. Cooper Decl. ¶13; Richman Decl. ¶8. The reduction in RFS-mandated demand for physical volumes of ethanol in turn leads to lower per-gallon prices for ethanol. *Id.*

Similar to the declarations in *Diamond Alternative*, Scott Richman's declaration concretely confirms what the commonsense economic principles tell us about the harm done to ethanol producers, including RFA's ethanol producing members, when EPA grants SREs. *Diamond Alternative*, 145 S. Ct. at 2137 ("[T]he fuel producers' standing declarations explain that California's regulations

5

have historically harmed the fuel producers by causing a decrease in purchases of fuel."). Contrary to Petitioners' assertions, Mr. Richman's statements are the opposite of vague generalities. Specifically, Mr. Richman explained that EPA's 48 retroactive exemptions granted for 2016 and 2017 adversely impacted ethanol sales volumes and prices, resulting in at least $2.3 billion in lost industry revenue from February through August 2019. Richman Decl. ¶12. The ethanol "blend rate" dropped in early 2018 as the marketplace became increasingly aware of the large-scale increase in SREs granted by EPA in 2017 and 2018, which by April 2018 had hit its lowest level since early 2015. Richman Decl. ¶13. According to Mr. Richman, a similar pattern repeated after EPA granted 31 SREs for compliance year 2018 in August of 2019. *Id.* Moreover, based on the return over operating cost estimates for a representative Iowa corn ethanol plant, as prepared by the Center for Agricultural and Rural Development at Iowa State University, profitability fell in 2018 and then plummeted in 2019 to the second-lowest level of the entire 2007-2025 period for which estimates are maintained—only slightly higher than the drought year of 2012. Richman Decl. ¶14.

Finally, as if commonsense economic principles and the repeated historical harm from EPA's prior retroactive grants of SREs weren't enough, the record evidence further confirms the economic harm that SREs cause to RFA's members given that EPA has itself concluded that SREs reduce demand and decrease RIN

prices. In its Regulatory Impact Analysis for its 2023-2025 renewable volume obligations ("Set 1"), EPA concluded that after 2018, D6 RIN prices—representing conventional ethanol—were "significantly lower than D4 and D5 RIN prices" and "[t]hese lower D6 RIN prices [were] largely the result of … SREs granted in 2018, which reduced the total number of D6 RINs needed for compliance with the RFS obligations." *Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes: Regulatory Impact Analysis*, EPA-420-R-23-015 (June 2023) at 40. Moreover, in its August 2025 SRE decisions—the action at issue in this case—EPA concluded that if it were "to allow small refineries to generate new, current-year vintage RINs to replace the old, expired RINs used to satisfy their prior RFS obligations [in 2018-2022], approximately 3 billion new RINs would be introduced into the market. This sudden and significant influx of RINs would result in decreased RIN prices, and in turn decreased future investments in renewable fuel production." *August 2025 Decisions on Petitions for RFS Small Refinery Exemptions*, EPA-420-R-25-010 (August 2025) ("2025 SRE Decisions") at 21-22.

All of these factors—commonsense economic principles, concrete history of economic harm, and EPA's own conclusions regarding the SREs at issue in this litigation—when taken together clearly demonstrate a substantial probability of economic injury to RFA's members, which includes (among others) 46 ethanol

7

producers,[2] in the form of reduced sales volumes and prices for their ethanol if this Court were to grant Petitioners' requested relief. Importantly, this kind of "[e]conomic harm to a business clearly constitutes an injury-in-fact … [a]nd the amount is irrelevant." *Carpenters Indus. Council*, 854 F.3d at 5. As this Court has routinely recognized, even "[a] dollar of economic harm is still an injury-in-fact for standing purposes." *Id.*

### B. *Sinclair Wyoming Refining Company v. EPA* Does Not Support A Heightened Standard for Standing

Petitioners attempt to heighten standing requirements beyond what is supported by the precedent of the Supreme Court and this Circuit in arguing that RFA assertions of harm are too sparse and conclusory to demonstrate standing. In doing so, Petitioners rely exclusively on *Sinclair Wyoming Refining Company v. EPA*, 114 F.4th 693 (D.C. Cir. 2024) ("*Sinclair*"), which involved the consolidated challenges from numerous small refineries to EPA's denial of all then-pending SRE petitions for compliance years 2016 to 2021, *including many of the same SRE petitions at issue in this case*. Motion at 10. Conspicuously absent from Petitioners' Opposition, and its many references to *Sinclair*, is the fact that this Court *granted* intervenor status to RFA (and three other renewable fuels trade

---

[2] *See* RFA, RFA Members, https://ethanolrfa.org/about/rfa-members (last visited Nov. 3, 2025).

8

associations) in that case based on the same economic injuries articulated in RFA's motion and declarations, and over the strenuous opposition of the small refinery petitioners. *See* Order, No. 22-1073, ECF #1973736. Petitioners fail to offer sufficient reasons to warrant a different result in this nearly identical case.

Petitioners' arguments are further undermined by the fact that the Supreme Court's recent decision in *Diamond Alternative* directly reversed *Ohio v. EPA*, 98 F.4th 288 (D.C. Cir. 2024)—the case on which *Sinclair* had expressly relied upon when asserting that a separate biofuels association's "sparse and conclusory claims about competitive standing [were] insufficient to establish standing." *Sinclair*, 114 F.4th at 722 (citing *Ohio*, 98 F.4th at 303).

Moreover, even if *Sinclair* remains good law regarding the evidentiary requirements for standing, EPA's own statements regarding the impact of Petitioners' requested relief—that EPA generate new, current-year vintage RINs to replace the old, expired RINs used to satisfy their prior RFS obligations in 2018-2022—supply the record evidence to satisfy *Sinclair*. As noted above, EPA concluded that such relief would cause "approximately 3 billion new RINs to be introduced into the market … [that] would result in decreased RIN prices, and in turn decreased future investments in renewable fuel production." 2025 SRE Decisions at 21-22.

9

## CONCLUSION

For the foregoing reasons, RFA respectfully requests that the Court grant RFA leave to intervene in support of Respondent.

Dated: November 3, 2025　　　　　　　Respectfully submitted,

/s/ *Matthew W. Morrison*
Matthew W. Morrison
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
(202) 663-8036
matthew.morrison@pillsburylaw.com

*Counsel for Renewable Fuels Association*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 1,938 words, excluding the exempted portions, as provided in Fed. R. App. P. 32(f). As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2. This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(a)(5)-(6) because it was prepared in proportionally-spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: November 3, 2025

Respectfully submitted,

/s/ *Matthew W. Morrison*
Matthew W. Morrison

*Counsel for Renewable Fuels Association*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 3, 2025　　　　　　　Respectfully submitted,

/s/ *Matthew W. Morrison*
Matthew W. Morrison

*Counsel for Renewable Fuels Association*