**REDACTED PUBLIC VERSION**

NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-1187 (consolidated with 25-1197)

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

ALON REFINING KROTZ SPRINGS, INC.,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY,

———————————

HF SINCLAIR REFINING & MARKETING LLC AND HF SINLCAIR
PARCO REFINING LLC,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY.

———————————

Petition for Review of Actions of the U.S. Environmental Protection
Agency

———————————

**BRIEF FOR U.S. ENVIRONMENTAL PROTECTION AGENCY**

———————————

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney
General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

Of Counsel:

SAMUEL STRICKLAND
*Attorney*
U.S. Environmental Protection
Agency

REDDING COFER CATES
ALEXANDER M. PURPURO
Environment & Natural Resources Div.
U.S. Department of Justice
Post Office Box 7611
Washington, D.C. 20044
(202) 353-5561 (Cates)
(202) 353-5230 (Purpuro)
redding.cates@usdoj.gov
alexander.purpuro@usdoj.gov

**REDACTED PUBLIC VERSION**

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

All parties appearing in this court are listed in the Brief for Petitioners, except that movant-intervenors Growth Energy, Renewable Fuels Association, Clean Fuels Alliance America, Coalition for Renewable Natural Gas, and Sustainable Advanced Biofuel Refiners Coalition have disclaimed their intent to pursue intervention.

### B.    Rulings Under Review

References to the rulings at issue appear in the Brief for Petitioners.

### C.    Related Cases

There are related cases within the meaning of Circuit Rule 28(a)(1)(C).  This Court has consolidated several challenges to the August 2025 Decisions under lead case *REH Company, LLC v. EPA,* No. 25-1180 (D.C. Cir.).  The following matters involve challenges to the same action: *Alon USA, LP v. EPA*, No. 25-60584 (5th Cir.); *Suncor Energy (U.S.A.) Inc. v. EPA*, No. 25-9582 (10th Cir.); *Hunt Refining Company v. EPA*, No. 25- 13759 (11th Cir.).

**REDACTED PUBLIC VERSION**

/s/ *Alexander M. Purpuro*
Alexander M. Purpuro

Counsel for Respondent

**REDACTED PUBLIC VERSION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................v

GLOSSARY ...................................................................x

INTRODUCTION ...............................................................1

JURISDICTION ................................................................2

PERTINENT STATUTES AND REGULATIONS ..................................3

STATEMENT OF ISSUES...........................................................3

STATEMENT OF THE CASE ....................................................4

I.      Statutory and regulatory background ...............................4

        A.      The Renewable Fuel Standard program....................4

        B.      The small refinery exemption ...........................6

II.     Agency adjudicatory background: The August 2025
        Decisions ...........................................................10

SUMMARY OF ARGUMENT ....................................................11

STANDARD OF REVIEW.......................................................14

ARGUMENT ..................................................................16

I.      This Court lacks jurisdiction to hear Petitioners'
        challenge to the 2014 Eligibility Regulation..................16

        A.      Petitioners cannot challenge the 2014 Eligibility
                Regulation through their petitions for review of
                the August 2025 Decisions...............................17

**REDACTED PUBLIC VERSION**

     B.    Mere application of the 2014 Eligibility Regulation to Petitioners in the August 2025 Decisions does not create "after-arising" grounds to challenge the decade-old rule. ..................................26

          1.    Petitioners' "increase in throughput in 2023" is not an "after arising factual development" permitting their late challenge to the 2014 Eligibility Regulation. .................26

          2.    EPA's application of the 2014 Eligibility Regulation in the August 2025 Decisions is not a "legal development" that could constitute an after-arising ground ...................................32

II.    EPA correctly applied the 2014 Eligibility Regulation to Petitioners' exemption petitions. .................................. 37

     A.    The text of the 2014 Eligibility Regulation requires refineries to establish their "small refinery" status for the requested exemption year and the prior year. .........................................................38

     B.    If the Court concludes that the 2014 Eligibility Regulation is "genuinely ambiguous," it should defer to EPA's longstanding interpretation. ............................47

III.   The 2014 Eligibility Regulation is consistent with the Clean Air Act. .................................................................. 52

IV.   Any remedy should not contradict the statutory timeframe for review of small refinery exemption petitions. ................................................................. 58

CONCLUSION .................................................................. 59

CERTIFICATE OF COMPLIANCE ........................................ 61

REDACTED PUBLIC VERSION

## TABLE OF AUTHORITIES

**CASES**

*Alon Refin. Krotz Springs v. EPA,*
    936 F.3d 628 (D.C. Cir. 2019) ................................................... 26, 31, 33

*Am. Fuel & Petrochem. Mfrs. v. EPA,*
    937 F.3d 559 (D.C. Cir. 2019) ...................................... 14, 16, 22, 23, 25

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
    588 F.3d 1109 (D.C. Cir. 2009) .................................................. 20, 22, 25

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
    705 F.3d 453 (D.C. Cir. 2013) ................................................... 21, 22, 25

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
    554 F. App'x 18 (D.C. Cir. 2014) ......................................................... 25

*AT&T Corp. v. FCC,*
    970 F.3d 344 (D.C. Cir. 2020) ............................................................. 47

*Balt. Gas and Elec. Co. v. ICC,*
    672 F.2d 146 (D.C. Cir. 1982) ....................................................... 31, 32

*Cboe Global Markets v. SEC,*
    155 F.4th 704 (D.C. Cir. 2025) ............................................................ 52

*Christopher v. SmithKline Beecham Corp.,*
    567 U.S. 142 (2012) ..................................................................... 49, 51

*City of Arlington v. FCC,*
    590 U.S. 290 (2013) ........................................................................... 49

*Coal. for Responsible Regul., Inc. v. EPA,*
    684 F.3d 102 (D.C. Cir. 2012) ............................................................ 26

## REDACTED PUBLIC VERSION

*CTS Corp. v. Waldburger,*
  573 U.S. 1 (2014) ................................................................ 21

*Doe v. SEC,*
  28 F.4th 1306 (D.C. Cir. 2022) ........................................... 50

*Duncan v. Walker,*
  533 U.S. 167 (2001) ............................................................ 47

*Engine Mfrs. Ass'n v. EPA,*
  88 F.3d 1075 (D.C. Cir. 1996) ............................................ 39

*GMS Mine Repair v. Fed. Mine Safety & Health Rev. Comm'n,*
  72 F.4th 1314 (D.C. Cir. 2023) ............................... 39, 42, 50

*Growth Energy v. EPA,*
  5 F.4th 1 (D.C. Cir. 2021) .................................................. 16

*HollyFrontier Cheyenne Refin. v. Renewable Fuels Ass'n,*
  594 U.S. 382 (2021) ..................................................... 54, 57

*Kern Oil & Refin. Co. v. EPA,*
  No. 21-71246, 2022 WL 3369528 (9th Cir. Aug. 16, 2022) ................ 55

*King v. St. Vincent's Hosp.,*
  502 U.S. 215 (1991) ............................................................ 41

*Kisor v. Wilkie,*
  588 U.S. 558 (2019) ................. 15, 16, 38, 39, 48, 49, 50, 51

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024) ....................................................... 15, 52

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
  606 U.S. 146 (2025) ....................................................... 23, 24

*Newman v. FERC,*
  27 F.4th 690 (D.C. Cir. 2022) ............................................ 38

**REDACTED PUBLIC VERSION**

*Ramsingh v. TSA*,
   40 F.4th 625 (D.C. Cir. 2022) ................................................ 42

*Sierra Club de P.R. v. EPA*,
   815 F.3d 22 (D.C. Cir. 2016) ...........................................20, 27

*Sierra Club v. EPA*,
   895 F.3d 1 (D.C. Cir. 2018) ................................................ 17

*Sinclair Wyo. Refin. Co. v. EPA*,
   114 F.4th 693 (D.C. Cir. 2024) ......... 8, 16, 19, 20, 22, 23, 25, 29, 30, 35

**STATUTES**

5 U.S.C. § 553(e) ................................................................ 26

42 U.S.C. § 7545($o$)(1)(K) ..........................................6, 7, 14, 53, 56

42 U.S.C. § 7545($o$)(2) ........................................................... 4

42 U.S.C. § 7545($o$)(2)(A)(i) ...................................................... 50

42 U.S.C. § 7545($o$)(2)(A)(iii)(I) ................................................. 50

42 U.S.C. § 7545($o$)(2)(B) ........................................................ 4

42 U.S.C. § 7545($o$)(3) ........................................................... 4

42 U.S.C. § 7545($o$)(5) ........................................................... 5

42 U.S.C. § 7545($o$)(9) ........................................................... 6

42 U.S.C. § 7545($o$)(9)(A) ....................................................... 52

42 U.S.C. § 7545($o$)(9)(A)(i) ...................................................... 6

42 U.S.C. § 7545($o$)(9)(A)(ii) .................................................... 55

**REDACTED PUBLIC VERSION**

42 U.S.C. § 7545(*o*)(9)(A)(ii)(I) ........................................................ 6

42 U.S.C. § 7545(*o*)(9)(A)(ii)(II) ................................................... 7, 58

42 U.S.C. § 7545(*o*)(9)(B) .......................................... 14, 52, 53, 56

42 U.S.C. § 7545(*o*)(9)(B)(i) ........................................................ 7

42 U.S.C. § 7545(*o*)(9)(B)(ii) .................................................. 7, 55

42 U.S.C. § 7545(*o*)(9)(B)(iii) ................................................... 58

42 U.S.C. § 7607(b)(1) ................................... 2, 3, 16, 17, 25, 28

42 U.S.C. § 7607(d)(1)(E) ......................................................... 14

42 U.S.C. § 7607(d)(9)(A) ......................................................... 14

Pub. L. No. 109-58, 119 Stat. 594 ............................................ 4

Pub. L. No. 110-140, 121 Stat. 1492 ......................................... 4

## CODE OF FEDERAL REGULATIONS

40 C.F.R. § 80.1141 (2007) ....................................................... 8

40 C.F.R. § 80.1401 ............................................................... 7, 8

40 C.F.R. § 80.1406 .................................................................. 4

40 C.F.R. § 80.1425 .................................................................. 5

40 C.F.R. § 80.1426 .................................................................. 5

40 C.F.R. § 80.1427 .................................................................. 5

40 C.F.R. § 80.1428 .................................................................. 5

**REDACTED PUBLIC VERSION**

40 C.F.R. § 80.1428(c) ........................................................................ 5

40 C.F.R. § 80.1429 ............................................................................. 5

40 C.F.R. § 80.1441(a)(1) .................................................................... 7

40 C.F.R. § 80.1441(a)(6) (2010) ......................................................... 8

40 C.F.R. § 80.1441(e)(2) .................................................................... 7

40 C.F.R. § 80.1441(e)(2)(iii) ...... 3, 8, 11, 12, 32, 36, 37, 39, 40, 42, 54, 56

40 C.F.R. § 80.1451(f)(1)(i)(A) ........................................................... 5

## FEDERAL REGISTER

79 Fed. Reg. 42128 (July 18, 2024) ..... 9, 11, 18, 31, 32, 33, 36, 43, 44, 46, 48, 49, 53

90 Fed. Reg. 41829 (Aug. 27, 2025) ........................................................ 10

## OTHER AUTHORITIES

H.R. 294, 95th Cong. 322 (1977) ........................................................... 28

REDACTED PUBLIC VERSION

# GLOSSARY

| | |
|---|---|
| CAA | Clean Air Act |
| EPA | Environmental Protection Agency |
| RFS | Renewable Fuel Standard |
| RINs | Renewable Identification Numbers |
| SRE | Small Refinery Exemption |

**REDACTED PUBLIC VERSION**

# INTRODUCTION

Petitioners seek to challenge a 2014 regulation more than a decade past the statutory deadline for review under the Clean Air Act. The 2014 Eligibility Regulation sets qualifications for the Small Refinery Exemption under the Clean Air Act's Renewable Fuel Standard (RFS) program. Contrary to Petitioners' suggestion, they could have challenged the 2014 Regulation when it was promulgated. They simply chose not to. EPA's mere application of the 2014 Regulation to them in the August 2025 Decisions does not provide "after arising" grounds for this untimely challenge.

This Court has consistently dismissed similar challenges as untimely. Because the Clean Air Act exclusively authorizes challenges to rules in the 60-day period following their publication in the Federal Register, or within 60 days of an after-arising event, and because Petitioners cannot identify a qualifying after-arising event, this Court lacks jurisdiction to hear their main challenge: that the 2014 Eligibility Regulation runs afoul of the Clean Air Act.

Petitioners also allege that EPA misapplied its 2014 Eligibility Regulation when it denied their requests for Small Refinery

**REDACTED PUBLIC VERSION**

Exemptions for calendar year 2024 as part of its August 2025 Decisions under the RFS program. While this narrow challenge is timely, it fails. EPA correctly denied Petitioners' requests for Small Refinery Exemptions because Petitioners could not demonstrate they were below the small refinery threshold for both 2024 and the previous year, 2023, as the 2014 Eligibility Regulation requires.

Petitioners' contrary interpretation is inconsistent with the plain language of EPA's regulations and their underlying purpose. Petitioners' reading of the 2014 Eligibility Regulation would treat identically operating refineries differently *not* based on the amount of crude oil they process annually but instead based on the date they sought an exemption.

Finally, even if this Court has jurisdiction to consider Petitioners' challenge to the 2014 Eligibility Regulation itself, that challenge fails because the regulation is consistent with the Clean Air Act.

## JURISDICTION

Petitioners timely filed petitions for review challenging the August 2025 Decisions, and the Court therefore has jurisdiction to review those decisions under the Clean Air Act. 42 U.S.C. § 7607(b)(1).

**REDACTED PUBLIC VERSION**

As more fully explained in Argument I.A, *infra*, however, the Court lacks jurisdiction to consider Petitioners' challenge to the 2014 Eligibility Regulation, 40 C.F.R. § 80.1441(e)(2)(iii), because it is untimely under 42 U.S.C. § 7607(b)(1).

## PERTINENT STATUTES AND REGULATIONS

All pertinent statues and regulations are included in Petitioners' addendum.

## STATEMENT OF ISSUES

1.      Whether this Court has jurisdiction to consider Petitioners' challenge to the validity of 40 C.F.R. § 80.1441(e)(2)(iii) more than a decade after the 60-day timeframe for challenging that regulation elapsed.

2.      Whether, consistent with its decade-long practice and interpretation of § 80.1441(e)(2)(iii), EPA correctly applied the regulatory requirements under § 80.1441(e)(2)(iii) when it denied Petitioners' petitions for an exemption from their obligations under the 2024 renewable fuel standard.

**REDACTED PUBLIC VERSION**

## STATEMENT OF THE CASE

I. **Statutory and regulatory background**

    A. **The Renewable Fuel Standard program**

In 2005 and again in 2007, Congress amended the Clean Air Act (CAA) to establish and revise the RFS program.  Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594; Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492.  Congress established increasing target volumes of renewable fuels for blending into transportation fuel each year until 2022, with EPA setting the volumes thereafter.  42 U.S.C. § 7545(*o*)(2)(B).  For each year, EPA issues a rule setting the "applicable volume" for each fuel type and converting those into "percentage standards" that each individual obligated party—including refiners and importers of transportation fuel—uses to determine the amount of renewable fuel it must introduce into the transportation fuel market.  *Id*. § 7545(*o*)(2)-(3); 40 C.F.R. § 80.1406.

Refiners comply with the RFS program by obtaining and "retir[ing]" a sufficient number of compliance credits, called Renewable Identification Numbers (RINs), that correspond to particular quantities

**REDACTED PUBLIC VERSION**

of renewable fuel, in an annual compliance demonstration.  40 C.F.R.

§§ 80.1425–80.1427; *see* 42 U.S.C. § 7545(*o*)(5) (requiring EPA to

promulgate regulations creating a credit system).  A refiner can satisfy

its obligations by blending the required quantity of renewable fuels into

gasoline and diesel or by purchasing a sufficient number of RINs from

other entities.  40 C.F.R. §§ 80.1427–80.1429.  RINs can be used to

satisfy compliance obligations in the year in which they are generated

and the following year.  40 C.F.R. §§ 80.1428(c).  Thus, 2024 RINs can

be used to satisfy compliance obligations for compliance years 2024 and

2025.  *Id.*

Annual compliance reports must be submitted "by whichever of

the following dates is latest: (1) March 31 of the subsequent calendar

year [or] (2) the next quarterly reporting deadline . . . after the date the

subsequent compliance year's renewable fuel standards become

effective [or] (3) The next quarterly reporting deadline . . . after the

annual compliance reporting deadline for the prior compliance year." 40

C.F.R. § 80.1451(f)(1)(i)(A).  The rule setting volumes and percentage

standards for 2026 has not yet been issued.  Thus, the compliance

**REDACTED PUBLIC VERSION**

deadline for 2025 compliance has not yet been set and will not be set until EPA issues the 2026 standards and they become effective.

## B.    The small refinery exemption

Congress created an exemption from the RFS program for certain obligated parties that qualify as "small refineries," 42 U.S.C. § 7545(*o*)(9), which, by definition, are those refineries with an "average aggregate daily crude oil throughput for a calendar year…[that] does not exceed 75,000 barrels" *id.* § (*o*)(1)(K).  The exemption has a three-tiered structure.

First, Congress granted all small refineries a temporary blanket exemption from the requirements of the RFS program until 2011.  *Id.* § 7545(*o*)(9)(A)(i).

Second, Congress directed the Department of Energy (DOE) to conduct a study "to determine whether compliance with the requirements of [the RFS program] would impose a disproportionate economic hardship on small refineries."  *Id.* § 7545(*o*)(9)(A)(ii)(I).  For any small refinery that DOE determined would be subject to disproportionate economic hardship, Congress directed EPA to "extend

**REDACTED PUBLIC VERSION**

the exemption under clause (i) for the small refinery for a period of not less than 2 additional years." *Id.* § 7545(*o*)(9)(A)(ii)(II).

Third, Congress provided that a small refinery "may at any time petition the [EPA Administrator] for an extension of the exemption under subparagraph (A) for the reason of disproportionate economic hardship." *Id.* § 7545(*o*)(9)(B)(i); 40 C.F.R. § 80.1441(e)(2) ("A refiner may petition the Administrator for an extension of its small refinery exemption, based on disproportionate economic hardship, at any time."). In considering such a petition, "the Administrator, in consultation with the Secretary of Energy, shall consider the findings of the study under subparagraph (A)(ii) and other economic factors." 42 U.S.C. § 7545(*o*)(9)(B)(ii).

In 2010, when EPA adopted regulations implementing the small refinery exemption after the 2007 statutory amendments, EPA regarded as eligible for hardship relief only those refineries that qualified for, and thus received, the blanket first-tier statutory temporary exemption by not exceeding the 75,000-barrel-per-day (bpd) crude oil-throughput threshold "for a calendar year," 42 U.S.C. § 7545(*o*)(1)(K), of 2006. *See* 40 C.F.R. §§ 80.1401, 80.1441(a)(1)

7

**REDACTED PUBLIC VERSION**

(defining a small refinery throughput threshold for 2006 and applying that definition to petitions for exemptions). In other words, under EPA's regulations, a refinery that met the "small refinery" definition in 2004 or 2006, and submitted a verification letter attesting to that fact, could always apply for an exemption extension, irrespective of whether it still met the statutory definition for the year for which it was seeking an exemption.[1]

In 2014, EPA amended its regulations to clarify that a refinery's eligibility to petition for an extension of its small refinery exemption is based on its crude oil throughput during the compliance year for which it desired an exemption and the year immediately preceding the desired exemption period. *See* 40 C.F.R. § 80.1441(e)(2)(iii) (2014 Eligibility Regulation). EPA originally proposed "that in order to qualify for an extension of its small refinery exemption, a refinery must meet the definition of 'small refinery' in § 80.1401 for *all full calendar years*

---

[1] EPA regulations implementing the first RFS program in 2007 used 2004 as the relevant throughput year. In the 2010 implementing regulations, EPA did not require already exempt small refineries to submit an additional letter to qualify. *See* 40 C.F.R. § 80.1441(a)(6) (2010), *referencing* 40 C.F.R. § 80.1141 (2007); *see also Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 715 (D.C. Cir. 2024) (*Sinclair IV*).

**REDACTED PUBLIC VERSION**

between 2006 and the date of submission of the petition for an extension of the exemption." 79 Fed. Reg. 42128, 42152 (July 18, 2014) (emphasis added).  However, "[a]fter further consideration of this matter," EPA recognized "that the proposal could unfairly disqualify a refinery from eligibility for small refinery relief based only on a single year's production since 2006" and thus modified the final rule to place "the focus on the time period immediately prior to and during the desired exemption period, which we believe is most appropriate given the objectives of the provision." *Id.*  EPA also explained how "these changes reasonably implement the statutory definition of 'small refinery,' which indicates that the 75,000 barrel aggregate daily crude oil throughput is for 'a calendar year,' but does not specify which calendar year should be the focus of inquiry." *Id.*  Since 2014, EPA has consistently evaluated *all* small refinery exemption petitions—including those submitted by the refineries at issue here in prior years—by requiring refineries seeking the exemption to demonstrate that they processed less than 75,000 bpd of crude oil for both the year in which the exemption is sought and the year prior to which the exemption is sought.  *See infra* Background II, Argument II.A at 44-45.

9

REDACTED PUBLIC VERSION

## II. Agency adjudicatory background: The August 2025 Decisions

On August 27, 2025, EPA published notice of the August 2025 Decisions on petitions for RFS small refinery exemptions in the *Federal Register*. *See* 90 Fed. Reg. 41829 (Aug. 27, 2025); August 2025 Decisions on Petitions for RFS Small Refinery Exemptions, EPA-420-R-25-010, JA009, (August 2025 Decisions).[2]  In the August 2025 Decisions, EPA acted on "175 individual small refinery exemption ('SRE') petitions from 38 refineries seeking an exemption from their Renewable Fuel Standard ('RFS') obligations for the 2016-2024 compliance years."  August 2025 Decisions at 1, JA009.

EPA denied Petitioners' petitions for a small refinery exemption for the 2024 compliance year because both Petitioners failed to demonstrate eligibility under the 2014 Eligibility Regulation.  *See* August 2025 Decisions at 7, JA018.  The 2014 Eligibility Regulation requires a refinery to "meet the definition of a small refinery (*i.e.*, its average aggregate daily crude oil throughput does not exceed 75,000 bpd) in the calendar year for which the refinery is seeking an exemption

---

[2] Citations to "JA" refer to Petitioners' "Joint Appendix," available at Doc. 2149606.

REDACTED PUBLIC VERSION

and the prior year." August 2025 Decisions at 7, JA018; *see also* 40 C.F.R. § 80.1441(e)(2)(iii); 79 Fed. Reg. at 42152. Petitioners failed to demonstrate they "m[et] the definition of a small refinery in . . . the prior year." August 2025 Decisions at 7, JA018; *see also* 40 C.F.R. § 80.1441(e)(2)(iii); 79 Fed. Reg. at 42152.

EPA noted that "two refineries each submitted a letter suggesting that EPA's regulations are contrary to the statute or improperly interpreted." August 2025 Decisions at 7, JA018. EPA disagreed with these assertions, noting that "EPA promulgated the regulations imposing the 75,000 bpd threshold for the year for which a refinery is seeking an exemption and the prior year through rulemaking in 2014, no parties challenged EPA's regulations at that time, and those regulations can no longer be challenged." *Id.* at 8, JA019.

## SUMMARY OF ARGUMENT

1. Petitioners impermissibly seek to challenge the 2014 Eligibility Regulation through a challenge to the EPA's adjudications in the August 2025 Decisions. While Petitioners' challenge to the August 2025 Decisions is timely, Petitioners' arguments that the 2014 Eligibility Regulation conflicts with the Clean Air Act come over a decade too late.

**REDACTED PUBLIC VERSION**

Petitioners had a ripe claim to challenge the 2014 Eligibility Regulation when it was promulgated, but they chose not to do so. This Court has held repeatedly that such back-door challenges to CAA regulations are time-barred. And Petitioners can show no valid "after arising" event that would give this Court jurisdiction to entertain their tardy challenge. Though their challenge asserting that EPA incorrectly *applied* the 2014 Eligibility Regulation to them in the August 2025 Decisions is timely, that is all. Their challenge to the regulation itself should be dismissed.

2. The 2014 Eligibility Regulation unambiguously requires a refinery to demonstrate that it satisfies the "small refinery" definition for two years. The Regulation's text expressly sets forth two conditions for eligibility: a petitioning refinery must meet the "small refinery" definition "for the most recent full calendar year prior to seeking an extension," *and* it must also be "projected" to meet that definition for the requested exemption year. 40 C.F.R. § 80.1441(e)(2)(iii). Reading the two eligibility conditions together makes clear that the 2014 Eligibility Regulation is structured to assess an exemption petition received before or during the requested exemption year because that

**REDACTED PUBLIC VERSION**

petition is "projecting" whether a refinery will satisfy the definition in the *future*. Accordingly, the "full calendar year prior to seeking an extension," as contemplated by the regulatory text, is the year prior to the exemption year.

Petitioners attack this conclusion, arguing that the prior year condition can be *any* year, determined solely by when a refinery decides to submit an exemption petition. But this selective interpretation ignores the complete regulatory text, failing to grapple with the second "projection" condition. And Petitioners' reading runs counter to EPA's express statements of meaning in the regulatory preamble and undermines the goals that EPA sought to accomplish with the 2014 Eligibility Regulation. Moreover, if the Court determines that the 2014 Eligibility Regulation is genuinely ambiguous, it should defer to EPA's longstanding and authoritative interpretation of its own regulation.

3. Finally, if this Court determines it has jurisdiction to consider Petitioners' attack on the 2014 Eligibility Regulation, it should uphold it as carrying out the best reading of the statute's small refinery exemption provision. While the statute defines a "small refinery" as one that, on average, produces less than 75,000 bpd over the course of "a

13

**REDACTED PUBLIC VERSION**

calendar year," 42 U.S.C. § 7545(*o*)(1)(K), it does not specify which "calendar year" is relevant for the purpose of determining eligibility for an extension under § 7545(*o*)(9)(B).  Subparagraph (B) is structured around a petition received in the antecedent—that is, *before* a refinery complies with its RFS obligations.  The statute contemplates a small refinery petitioning for relief prior to compliance with its annual obligations, thus requiring EPA to determine eligibility *before* a refinery's throughput for the requested exemption year is known. EPA's 2014 Eligibility Regulation thus checks eligibility in the scenario contemplated by the statute, by requiring a refinery to *be* a "small refinery" at the time it applies, and that it be *projected* to be a "small refinery" during the requested exemption period, thus ensuring that its eligibility will be maintained.

## STANDARD OF REVIEW

The Court may reverse an agency's action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(1)(E), (d)(9)(A); *Am. Fuel & Petrochem. Mfrs. v. EPA*, 937 F.3d 559, 574 (D.C. Cir. 2019) (*AFPM*) (applying standard to CAA challenges).

**REDACTED PUBLIC VERSION**

In deciding questions of statutory interpretation, "[c]ourts must exercise their independent judgment," but "[c]areful attention to the judgment of the Executive Branch may help inform that inquiry." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024). To resolve the meaning of disputed statutory language, a court shall adopt the interpretation that the court, "after applying all relevant interpretive tools, concludes is best." *Id.* at 400. "[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Id.* at 413.

When reviewing an agency's interpretation of its own regulations, courts must "exhaust all the 'traditional tools' of construction" and "carefully consider the text, structure, history, and purpose of a regulation" and "must enforce the plain meaning those methods uncover." *Kisor v. Wilkie*, 588 U.S. 558, 575, 581 (2019). If, however, the Court ultimately concludes that a regulation is "genuinely ambiguous," the Court defers to the agency's interpretation if it is "within the bounds of reasonable interpretation," and if "the character

**REDACTED PUBLIC VERSION**

and context of the agency interpretation entitles it to controlling weight." *Id.* at 575-76 (citations omitted).

## ARGUMENT

### I. This Court lacks jurisdiction to hear Petitioners' challenge to the 2014 Eligibility Regulation.

Petitioners' attempt to challenge the 2014 Eligibility Regulation comes over a decade too late. Petitioners assert that the 2014 Eligibility Regulation's purported "two-year" requirement to qualify for a small refinery exemption conflicts with the CAA. Petr. Br.[3] § I.A. And though they maintain that their quarrel is not with the 2014 Eligibility Regulation itself but with the fact that EPA applied it to them in the August 2025 Decisions, Petr. Br. § II.A, this Court has repeatedly held such back-door CAA challenges to be untimely, *see e.g. Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 717 (D.C. Cir. 2024) (*Sinclair IV*); *AFPM*, 937 F.3d at 585; *Growth Energy v. EPA*, 5 F.4th 1, 12-13 (D.C. Cir. 2021), and it should do the same here.

The CAA limits review of agency actions with a clear, jurisdictional 60-day time bar. 42 U.S.C. § 7607(b)(1); *see also Sierra*

---

[3] Citations to "Petr. Br." refer to the Joint Brief for Petitioners. Doc. 2149604.

**REDACTED PUBLIC VERSION**

*Club v. EPA*, 895 F.3d 1, 16 (D.C. Cir. 2018). The CAA permits only one exception to the 60-day time bar: "after-arising" grounds. 42 U.S.C. § 7607(b)(1). Thus, Petitioners must either confine themselves to challenging an issue in the August 2025 Decisions *other than* the validity of the 2014 Eligibility Regulation, or they must show "after-arising" grounds to justify their late challenge to the 2014 Eligibility Regulation. They have done neither.

> **A.    Petitioners cannot challenge the 2014 Eligibility Regulation through their petitions for review of the August 2025 Decisions.**

Any argument that requiring two years of crude oil throughput data is inconsistent with the CAA should have been raised within 60 days of the 2014 Eligibility Regulation's publication in the Federal Register. From the outset, the 2014 Eligibility Regulation has required refineries to process below the 75,000 bpd threshold in two consecutive years in order to demonstrate their eligibility for a small refinery exemption. As explained in more detail below, *infra* Argument § II.A, the 2014 Eligibility Regulation requires more than one year of data by its plain language. And in that same final rule, EPA explained that it interprets the regulation to mean exactly this by placing "the focus on

**REDACTED PUBLIC VERSION**

the time period *immediately prior to and during* the desired exemption period, which we believe is most appropriate given the objectives of the provision."  79 Fed. Reg. at 42152.

As Petitioners repeatedly concede, the 2014 Eligibility Regulation was the only basis for EPA's determinations that their petitions for a small refinery exception exemption be denied.  Petr. Br. 38, ("the 2014 [Eligibility] [R]egulation was the only ground EPA invoked for denying the exemption"), 40 ("EPA invoked the 2014 [Eligibility] [R]egulation as its sole basis for deeming petitioners' ineligible").  And Petitioners challenge no action in the August 2025 Decisions other than EPA's application of the 2014 Eligibility Regulation to them, rendering them ineligible for an exemption.[4]  Therefore, their challenge to EPA's eligibility determination in the August 2025 Decisions is, in reality, nothing more than an untimely challenge to the 2014 Eligibility Regulation itself.

---

[4] Indeed, in its motion for expedited briefing, Petitioner Krotz Springs asserted that deciding this case "does not depend on the record before EPA" when it made and issued its August 2025 Decisions.  Doc. 2135663 at 17.

**REDACTED PUBLIC VERSION**

Petitioners counter that, because Section 7607(b)(1) "expressly provides for judicial review of the August 2025 denial," they must be permitted to challenge the validity of the 2014 Eligibility Regulation. Petr. Br. 38. That's nonsense. Just a year ago, this Court held the opposite on this exact issue, from a party in Petitioners' exact position, and for the exact reason that determines the outcome here: a party may not assert an untimely challenge to the validity of a pre-existing CAA regulation as part of its challenge to EPA's decisions on small refinery exemptions. *Sinclair IV*, 114 F.4th at 717.

In *Sinclair IV*, refineries challenged EPA's denial of two refineries' requests for small refinery exemptions because they failed to submit a letter verifying their status as a small refinery pursuant to a 2007 regulation that EPA issued under the RFS program. *Id.* As here, the petitioners challenged EPA's interpretation of its extant eligibility regulation as made in those refineries' decisions *and* argued that "the regulations so interpreted are contrary to the statute and must be set aside." *Id.* This Court upheld EPA's interpretation and application of its 2007 regulation, *id.* ("EPA permissibly required qualifying refineries to claim the exemption by submission of the letter"), as the Court

19

**REDACTED PUBLIC VERSION**

should do here.  *See supra* Argument § II.  It also found that the

petitioners' challenge to the 2007 regulation *itself* was barred by the

CAA as untimely, even as presented by petitioners in their challenge to

EPA's 2022 decisions.  *Sinclair IV*, 114 F.4th at 717.  This Court noted

"the verification-letter rule is not new," and the petitioner "could have

raised a challenge to the verification-letter requirement" but "chose not

to . . . it cannot now bring such a challenge."  *Id.* at 717-18.

 *Sinclair IV* is only a recent case in a long line of this Court's CAA

decisions holding that a party may not untimely challenge a regulation

when EPA later applies that regulation in an adjudication.  *See*, *e.g.*,

*Am. Rd. & Transp. Builders Ass'n v. EPA (ARTBA I)*, 588 F.3d 1109,

1113 (D.C. Cir. 2009); *Sierra Club de P.R. v. EPA*, 815 F.3d 22, 27 (D.C.

Cir. 2016); *contra* Petr. Br. 38-39.

 Petitioners argue that the 60-day time bar does not apply here

because EPA applied the 2014 Eligibility Regulation in its August 2025

Decisions, which "are new final actions" for which Petitioners have

timely sought review. Petr. Br. 39.  But this Court has rejected exactly

this argument, explaining that "if the mere application of a regulation .

. . were sufficient to . . . trigger a new 60–day statute of limitations

**REDACTED PUBLIC VERSION**

period, [Congress'] concerns about preserving 'the consequences' of failing to bring a challenge within 60 days of a regulation's promulgation would be meaningless." *Am. Rd. & Transp. Builders Ass'n v. EPA (ARTBA II)*, 705 F.3d 453, 458 (D.C. Cir. 2013) (citation omitted).[5]  Untimely challenges to a CAA regulation do not magically become timely when EPA later applies that regulation anew in an adjudication resulting in an adverse outcome.  Indeed, if petitioners could simply manufacture this Court's jurisdiction to reconsider long-established regulations, the CAA's jurisdictional timing provision would mean nothing.

Petitioners' attempts to distinguish this line of cases fail.  First, they claim that because *ARTBA I* and *ARTBA II* involved untimely challenges to a pre-existing CAA regulation by an industry "association" where EPA's regulation was not being applied to "the petitioner itself,"

---

[5] Although *ARTBA II* refers to the new 60-day review window triggered by after-arising grounds under section 307(b)(1) as a "statute of limitations period," section 307(b)(1) is more appropriately categorized as a "statute of repose." *See CTS Corp. v. Waldburger*, 573 U.S. 1, 7-9 (2014) (distinguishing a "statute of limitations," which is "based on the date when the claim accrued," from a "statute of repose," "measured … from the date of the last culpable act or omission of the defendant").

**REDACTED PUBLIC VERSION**

Petr. Br. 41-42, these decisions do not apply to bar their claims. This argument makes no sense. First, industry associations are required to demonstrate that at least one of their members has standing, and thus at least one member was "itself" the subject of the regulation. *See ARTBA I*, 588 F.3d at 1111-12. Are Petitioners claiming that the industry association in *ARTBA I* and *ARTBA II* lacked standing to challenge EPA's regulation? This Court certainly didn't think so. *ARTBA I*, 588 F.3d at 1112 ("Standing, in short, is not ARTBA's problem"). Second, *ARTBA I* and *ARTBA II* did not turn on the issue of whether the regulation was being applied to the association or its member refiners. All that mattered to this Court was that the petitioner had the opportunity to challenge the pre-existing regulation, chose not to, and then attempted to belatedly attack the regulation as part of a challenge to a subsequent agency action. *See, ARTBA I*, 588 F.3d at 1113; *ARTBA II*, 705 F.3d at 458. Third, and most importantly, Petitioners ignore *Sinclair IV* and *AFPM*, two CAA cases where this Court *did* bar an untimely claim *where the petitioner itself was subject to the regulation being challenged. Sinclair IV*, 114 F.4th at 717; *AFPM*, 937 F.3d at 586.

**REDACTED PUBLIC VERSION**

Petitioners claim that applying *ARTBA I* and *II* to bar their claims here would create a conflict with the Supreme Court's recent decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). Petr. Br. 42-43. That's incorrect. First, as Petitioners admit, *McLaughlin* involved an as-applied challenge to the Hobbs Act. *Id.* But as noted elsewhere, this Court has taken a different approach in CAA cases governed by the judicial review provision in section 307(b)(1). *Sinclair IV*, 114 F.4th at 717; *AFPM*, 937 F.3d at 586.

Second, *McLaughlin* is inapplicable because the parties agree that this isn't an enforcement proceeding, *see* Petr. Br. 43, but this fact hardly aids Petitioners. Here, *Sinclair IV, et al.* bar Petitioners' claims as untimely.

Third, *McLaughlin* is inapposite. That case involved a citizen suit class action brought by a chiropractic clinic against an advertiser in the district court. 606 U.S. at 149-50. The question presented was whether the FCC's interpretation of the Hobbs Act was binding on the district court when the Commission was not even a party to the suit but where the parties could have—but did not—utilize the Hobbs Act's pre-enforcement review provision. *Id.* at 149-56. First, the Court noted

**REDACTED PUBLIC VERSION**

that "there are three categories of statutes that authorize pre-enforcement review." *Id.* at 153. "Statutes in the first category authorize pre-enforcement judicial review and expressly *preclude* judicial review in subsequent enforcement proceedings." *Id.* The Court cited "the Clean Air Act" as an example of the first category. *Id.* The Hobbs Act, on the other hand, is in a third category that "neither expressly preclude nor expressly authorize judicial review." *Id.* at 155. The Court concluded that in this third category—which does not include the CAA—"the proper default rule" is that "a district court must independently determine for itself whether the agency's interpretation of a statute is correct." *Id.* So, even if this were an enforcement proceeding, Petitioner's claims would be barred because the CAA is in the "first" category. *See id.* at 153.

Petitioners' reliance on decisions analyzing statutory judicial review deadlines for other regulatory regimes is similarly misplaced. Petitioners appeal to the precept in non-CAA cases that "those affected when an agency seeks to apply [a] rule after the statute of limitations has passed may challenge the that application on the grounds that it conflicts with the statute from which its authority derives." Petr. Br. 39

24

**REDACTED PUBLIC VERSION**

(internal quotes removed).  But this more general principle of administrative law is trumped here by Congress' inclusion of a unique judicial review provision in the CAA.  When interpreting the CAA's judicial review provision, this Court has explicitly and repeatedly held that a party cannot challenge the validity of a regulation through an as-applied challenge after the 60-day statutory deadline set forth in 42 U.S.C. § 7607(b)(1).  *See Sinclair IV*, 114 F.4th at 717; *AFPM*, 937 F.3d at 586; *Am. Rd. & Transp. Builders Ass'n v. EPA*, 554 F. App'x 18, 19 (D.C. Cir. 2014) (citing *ARTBA I*, 588 F.3d at 1113; *ARTBA II*, 705 F.3d at 456-58).  By its terms, Section 7607(b)(1) strictly bars any challenge outside of the 60-day window for judicial review unless the petitioner identifies "after-arising" grounds for review, which Petitioners have failed to do here.

Because the 2014 Eligibility Regulation is "not new," Petitioners cannot challenge the validity of the regulation under the guise of challenging *only* the August 2025 Decisions. *Sinclair IV*, 114 F.4th at 717. Their challenge is untimely and should be dismissed.[6]

---

[6] Notably, Petitioners are not without recourse if they believe the regulation contradicts the CAA.  Petitioners can raise any concerns they may have with the regulation directly to EPA in a petition for

**B.    Mere application of the 2014 Eligibility Regulation to Petitioners in the August 2025 Decisions does not create "after-arising" grounds to challenge the decade-old rule.**

The CAA bars Petitioners' untimely challenge unless there is an after-arising ground for doing so, and Petitioners fail to identify any after-arising grounds that warrant review at this late stage.

**1.    Petitioners' "increase in throughput in 2023" is not an "after arising factual development" permitting their late challenge to the 2014 Eligibility Regulation.**

Petitioners contend that because the 2014 Eligibility Regulation did not affect "their eligibility" for an exemption until 2023, when they exceeded the CAA's cutoff for the first time, their claims regarding the legality of the 2014 Eligibility Regulation did not ripen until that event. Petr. Br. 45-46.  (citing *Coal. for Responsible Regul., Inc. v. EPA*, 684 F.3d 102, 131 (D.C. Cir. 2012)).  But this is simply incorrect.  The 2014 Eligibility Regulation affected Petitioners' eligibility when it was promulgated.  Petitioners had a ripe claim then that the 2014 Eligibility

---

rulemaking under 5 U.S.C. § 553(e), allow EPA to consider those concerns, and, if EPA ultimately denies such petition, challenge that decision.  *Alon Refin. Krotz Springs v. EPA*, 936 F.3d 628, 642-46 (D.C. Cir. 2019).  What Petitioners *cannot* do is attempt to challenge a CAA regulation through a challenge to an individual adjudication.

**REDACTED PUBLIC VERSION**

Regulation impermissibly required them to submit more than one year of data when—they say—the CAA requires them to submit only one. Indeed, this Court has held that the simple application of a CAA regulation against a party, even for the first time (which is not the case here), could not establish after-arising grounds for a tardy challenge to the regulation. *See Sierra Club de P.R.*, 815 F.3d at 27-28 (collecting cases).[7]

Petitioners fail to explain how their claims regarding the 2014 Eligibility Regulation were unripe in 2014, given that they concede that the 2014 Eligibility Regulation "bound petitioners from its inception." *See* Petr. Br. 49.  They thus concede that 1) they were covered by the 2014 Eligibility Regulation, 2) they knew they had to demonstrate that they had met the small refinery definition for two years, and 3) they knew what consequences would flow if they could not satisfy that requirement. *Id*.  Petitioners protest that, even though all the forgoing is true, the 2014 Eligibility Regulation "had no impact on them until

---

[7] This Court has even gone so far as to find that even the fact that a party did not *exist* when a regulation was initially promulgated is insufficient to provide "after arising" grounds for a later challenge. *Sierra Club de P.R.*, 815 F.3d at 27-28.

**REDACTED PUBLIC VERSION**

now." *Id.* This contention is plainly false. The 2014 Eligibility Regulation required (and still requires) that refineries seeking exemptions not exceed the 75,000-bpd threshold for both the compliance year for which the exemption was sought and the year prior to that compliance year, and Petitioners have been bound by that demonstration requirement since 2014. Petr. Br. § I. Every argument Petitioners make that the 2014 Eligibility Regulation requires them to be under the threshold for more than one year in contravention of the CAA's "small refinery" definition was ripe for challenge in 2014; no speculation was required. ███████████████████████

███████████████████████████████████████

███████████████████████████ *See infra* Argument II.A. (citing RSA5, RSA11 n.2).[8] Petitioners thus cannot identify any after-arising grounds for this late challenge.[9]

---

[8] Citations to "RSA" refer to Respondent's Sealed Appendix filed concurrently with this brief.

[9] Congress intended for the after-arising provision in CAA section 7607(b)(1) to open a new window for judicial review only when "a petitioner can show that the basis for his challenge did not exist or was not reasonably to be anticipated before the expiration of 60 days . . . ." H.R. 294, 95th Cong. 322 (1977).

**REDACTED PUBLIC VERSION**

This Court reached this exact conclusion in *Sinclair IV*, noting that because the Petitioner "chose not to bring a claim and instead complied with the renewable fuel requirements in 2008, 2009, and 2010 . . . it cannot now bring such a challenge." 114 F.4th at 718. The same is true of these Petitioners. They qualified as small refineries for the initial exemptions in 2006 and were therefore eligible to apply for subsequent extensions under the 2014 Eligibility Regulation from the moment it took effect. Their challenge to the 2014 Eligibility Regulation therefore ripened the moment the regulation was issued.

Petitioners attempt to substitute the proper standard—whether EPA's application of the 2014 Eligibility Regulation was *foreseeable* in 2014—with a standard of their own invention: whether the consequences of EPA applying the 2014 Eligibility Regulation to them was "concrete" in that it "affected petitioners' eligibility" or "had no impact on them." Petr. Br. at 47-49, 52. This Court in *Sinclair IV* rejected a very similar claim. There, petitioners claimed that a timely challenge to the verification-letter requirement "would have been speculative," because at the time EPA held a different position on the receipt of an initial blanket exemption. *Sinclair IV*, 114 F.4th at 718.

**REDACTED PUBLIC VERSION**

But this Court rightly pointed out that petitioners were challenging the 2007 verification-letter requirement *itself*, and petitioners had standing to bring such a challenge the moment they qualified to seek a small refinery exemption for the first time.  *Id.*  Therefore, it does not matter whether the Petitioners here were below the threshold in every year from 2014 until 2022, or that it was not until they exceeded the threshold in 2023 that they faced losing their ability to obtain an exemption.  Their decision to "not bring a claim" against the 2014 Eligibility Regulation dooms their attempt to challenge the 2014 Eligibility Regulation now.

The obvious ripeness of a challenge Petitioners could have brought within 60 days of the 2014 Eligibility Rule's promulgation allays any concerns Petitioners express with their "due process" rights.  Petr. Br. 44.  Due process problems might arise "if petitioners were denied [a small refinery exemption] without any opportunity to challenge the basis of the denial."  *Id.*  But that is not the case here, where Petitioners plainly *did* have "every opportunity to bring that challenge" in 2014, and they "chose not to."  *See Sinclair IV*, 114 F.4th 718.  Moreover, as noted in n.2, *supra*, Petitioners can always petition for rulemaking if

**REDACTED PUBLIC VERSION**

they believe the regulation is unlawful. *See Alon Refin. Krotz Springs*, 936 F.3d at 642-46. Petitioners thus have an abundance of process available to them, just not through a challenge to the August 2025 Decisions.

In an attempt to avoid this binding line of decisions, Petitioners rely on *Baltimore Gas and Electric Co. v. ICC*, 672 F.2d 146 (D.C. Cir. 1982). But *Baltimore Gas* is inapposite. As with their previous reliance on non-CAA decisions, the Court in *Baltimore Gas* was not interpreting the CAA. *Id*. at 147. Moreover, that case involved a challenge to an interpretive document which imposed no obligation and had no "current impact" on the challenging party. *Id*. at 148-49. In contrast and as discussed above, the 2014 Eligibility Regulation imposed real and immediate requirements on Petitioners in 2014. 79 Fed. Reg. at 42152. Unlike the circumstances in *Baltimore Gas*—where the interpretive order "call[ed] for no change in" the petitioner's conduct, *see Balt. Gas and Elec. Co.*, 672 F.2d at 149—the 2014 Eligibility Regulation, at the outset, required a demonstration that Petitioners process below the 75,000 bpd threshold for the compliance year for which they seek the exemption and the year before that compliance year. To the extent they

**REDACTED PUBLIC VERSION**

believed such a requirement was inconsistent with the statute, they

could have brought that challenge within the 60-day window.[10]

> ### 2. EPA's application of the 2014 Eligibility Regulation in the August 2025 Decisions is not a "legal development" that could constitute an after-arising ground.

Petitioners are likewise incorrect that any legal development has

occurred with respect to the 2014 Eligibility Regulation. The

Regulation has remained unchanged, and EPA has consistently

interpreted and applied the Regulation the same way since its

inception, including in the August 2025 Decisions. *See* 79 Fed. Reg. at

42152; 40 C.F.R. § 80.1441(e)(2)(iii); June 2022 Denial of Petitions for

RFS Small Refinery Exemptions, EPA-420-R-22-011,

[https://perma.cc/8TMY-JLCB] (last visited Jan. 14, 2026) (June 2022

Denials). They are therefore incorrect that there is an after-arising

---

[10] Petitioners also claim—bizarrely—that *Baltimore Gas* "didn't turn on the particular statute at issue." Petr. Br. 48. It's difficult to tell what they mean by this. The holding of *Baltimore Gas*, like the holding of all cases, is limited to the facts and law presented there. *Baltimore Gas* involved a challenge to a discrete adjudicatory decision of the Interstate Commerce Commission under the Staggers Act. 672 F.2d at 148. The Court did not purport to interpret the CAA (or any other federal statute, for that matter) in its decision, and nothing in this Court's long line of decisions suggests that *Sinclair IV*, etc., conflict with *Baltimore Gas*.

**REDACTED PUBLIC VERSION**

ground to challenge the 2014 Eligibility Regulation.  *See Alon Refin.*

*Krotz Springs, Inc.*, 936 F.3d at 646.

Petitioners try and fail to minimize the import of this clear, consistent, and public history.  Petr. Br. 34-35.  They say that EPA "has mustered just one example" of an SRE petition denial like theirs despite "adjudicat[ing] hundreds of exemption petitions."  *Id.* at 35.  This is an odd criticism.  EPA adopted the requirement of concern to Petitioners in the 2014 Eligibility Regulation and expressly discussed that requirement in the preamble to that regulation.  *See* 79 Fed. Reg. at 42152.  That rulemaking put refineries on notice of what would be required to qualify as a "small refinery" and thus be eligible to petition for a small refinery exemption.  Since 2014, most refineries that have petitioned for a small refinery exemption have, in fact, qualified as a "small refinery," and therefore were under the threshold every year. *See e.g.,* August 2025 Decisions at 1, 7, JA009, JA018 (EPA decided 175 SRE petitions for compliance years ranging from 2016-2024, finding all but two eligible); June 2022 Denials.  Nevertheless, in a June 2022 instance in which a party exceeded the threshold in only one year, EPA denied that party's exemption request on the same basis and for the

**REDACTED PUBLIC VERSION**

same reason it denied Petitioners' requests in the August 2025

Decisions.  *See* June 2022 Denials at 23.  Petitioners cite no example of

EPA ever interpreting or applying the 2014 Eligibility Regulation in the

manner they advocate here, nor have they mustered even a single

example of EPA applying the regulation inconsistently in a past

adjudication.  Petr. Br. 34-36.  Thus, the evidence all points in one

direction: EPA announced its interpretation of the 2014 Eligibility

Regulation at the time of enactment and has consistently applied that

approach ever since.

   And even if Petitioners *could* demonstrate some uncertainty as to

how the Regulation should be interpreted, that would not provide "after

arising" grounds.  This Court lacks jurisdiction to entertain Petitioners'

attack on the 2014 Eligibility Regulation's consecutive year

requirement on the basis that it is inconsistent with the statutory text.

*See* Petr. Br. § I.A.  The fact that Petitioners now argue that EPA is

misinterpreting its 2014 Eligibility Regulation in the August 2025

Decisions, Petr. Br. § I.B., does not give Petitioners "after-arising"

grounds to attack the decade-old regulation itself as inconsistent with

the law.  This Court has already rejected such a challenge.  In *Sinclair*

**REDACTED PUBLIC VERSION**

*IV*, petitioners argued both that EPA contradicted its 2007 regulation in its 2022 decisions and that the 2007 regulation could be challenged under "after arising grounds." 114 F. 4th at 717-18. The Court dealt with the regulatory interpretive challenge first, finding that EPA correctly applied its regulation when it "required qualifying refineries to claim the exemption by submission of the letter." *Id.* But when the Court turned to petitioners' challenge that the 2007 regulation, as interpreted by EPA in 2022, was "contrary to the statute and must be set aside," it correctly found the challenge to be time-barred. *Id.* at 718. It did not, as Petitioners urge here, allow a back-door challenge to the legitimacy of the regulation itself over a decade after the regulation was issued. *Id.*

Petitioners contend that EPA's position here "makes little sense" because the 2014 Eligibility Regulation was merely an articulation of "EPA's information-gathering procedures." Petr. Br. 52. Petitioners further contend that such "information-gathering procedures" did not put Petitioners on notice that EPA would require two consecutive years of data. *Id.* But Petitioners cite no support for their contention that the 2014 Eligibility Regulation was merely an agency "public service

**REDACTED PUBLIC VERSION**

announcement" disclosing its internal processes to the regulated community. There is no such support. The 2014 Eligibility Regulation plainly requires parties seeking an exemption to not exceed the 75,000-bpd threshold for two years, 40 C.F.R. § 80.1441(e)(2)(iii), and the Regulation's preamble further clarifies that EPA interprets the Regulation to require that refineries not exceed the threshold for the compliance year or years for which an exemption is sought and the prior compliance year. 79 Fed. Reg. at 42152. It is of no moment that Petitioners now argue that in the instant case, the 2014 Eligibility Regulation *could be read* to require only one year of compliant crude oil throughput data. *See* Petr. Br. 52; *see also id.* § I.B. Even assuming for the moment that Petitioners are correct—they are not, *see infra* Argument § II.A—Petitioners' new interpretation, offered for the first time in this litigation, does not somehow mean that *EPA's* interpretation of the 2014 Eligibility Regulation has "changed since the regulation's promulgation." *See* Petr. Br. 52. In this inquiry, *Petitioners*' new interpretation is irrelevant. Thus, Petitioners have not identified any "legal development" that could provide after-arising grounds.

**REDACTED PUBLIC VERSION**

As with the petitioners in *Sinclair IV*, these Petitioners have failed to identify any "after arising" grounds that would make their challenge to the 2014 Eligibility Regulation timely. Their petitions should be dismissed.

## II. EPA correctly applied the 2014 Eligibility Regulation to Petitioners' exemption petitions.

The 2014 Eligibility Regulation expressly requires a refinery seeking a small refinery exemption to demonstrate that it qualifies as a "small refinery" because it processed less than 75,000 bpd of crude oil for both the compliance year for which the exemption is sought (the "requested exemption year") and the year prior to the requested exemption year. 40 C.F.R. § 80.1441(e)(2)(iii). Here, EPA correctly found Petitioners ineligible because both failed to satisfy this requirement: neither Petitioner demonstrated it had processed less than 75,000 bpd of crude oil in 2023, the year prior to the requested exemption year.

Petitioners wrongly assert that this requirement can be overridden by the timing of a refinery's petition, *i.e.*, that EPA's longstanding regulation should be interpreted—for the first time ever— as requiring Petitioners to demonstrate that they processed less than

37

**REDACTED PUBLIC VERSION**

75,000 bpd of crude oil in the requested exemption year and in the compliance year before the year they *apply* for the exemption.  But this interpretation would mean that two identically situated parties with the same throughput could petition EPA for an exemption for the same year and receive different decisions based on *when they submitted their petitions*.  This is not just absurd and inequitable; it is contrary to the text of the 2014 Eligibility Regulation.  The Court should find that EPA properly interpreted and applied the 2014 Eligibility Regulation.

> **A.    The text of the 2014 Eligibility Regulation requires refineries to establish their "small refinery" status for the requested exemption year and the prior year.**

The text of the 2014 Eligibility Regulation requires refineries to meet the small refinery definition for both the requested exemption year and the year prior to that compliance year.  Because this matter involves EPA's interpretation of its own regulation, this Court first considers whether the regulation is "genuinely ambiguous," such that the question of deference to EPA's interpretation becomes necessary to resolve.  *Newman v. FERC*, 27 F.4th 690, 696 (D.C. Cir. 2022) (citing *Kisor*, 588 U.S. at 574-75).  To determine whether a regulation is genuinely ambiguous, courts must "exhaust all the 'traditional tools' of

**REDACTED PUBLIC VERSION**

construction" and "carefully consider the text, structure, history, and purpose of a regulation." *Kisor*, 588 U.S. at 575.  And "[t]he most traditional tool, of course, is to read the text[.]" *GMS Mine Repair v. Fed. Mine Safety & Health Rev. Comm'n*, 72 F.4th 1314, 1320 (D.C. Cir. 2023) (quoting *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1088 (D.C. Cir. 1996)) (alterations in original).

The text of the 2014 Eligibility Regulation requires a refinery to "petition EPA for an extension of its small refinery exemption," 40 C.F.R. § 80.1441(e)(2)(iii), and expressly sets forth two requirements that a refinery must "meet the definition of 'small refinery' in § 80.2" for two years and thus "qualify" to petition for an exemption, *id.* § 80.1441(e)(2)(iii).  First, "a refinery must meet the definition of 'small refinery' in [40 C.F.R.] § 80.2 for the most recent full calendar year prior to seeking an extension," (the first, "prior year" requirement).  *Id.* § 80.1441(e)(2)(iii).  And second, the refinery "*must be projected* to meet the definition of 'small refinery' in § 80.2 for *the year or years for which an exemption is sought*," (the second, "requested exemption year" requirement).  *Id.* (emphasis added).

**REDACTED PUBLIC VERSION**

Reading these requirements together establishes that petitioning refineries must satisfy the "small refinery" definition for two consecutive years—the requested exemption year and the prior year. According to the regulatory text, data must demonstrate that a refinery that petitions EPA for an exemption is "projected" to process less than 75,000 bpd of crude oil in the requested exemption year(s). *See id.* "Projected," as used here, means "to plan, figure, or estimate for the future." Merriam-Webster's Collegiate Dictionary, (11th ed. 2020). Thus, the Regulation contemplates a petition that is received before or during the requested exemption year, which must project throughput for that year. *See* August 2025 Decisions at 8, JA019 (acknowledging that the 2014 Eligibility Regulation had been "written to apply in the scenario" where a refinery "petitions for an exemption at a time when the year prior to which they are seeking an exemption is complete"). And to receive an exemption, the petition must *also* show that it met the definition of a small refinery during the "most recent full calendar year prior to seeking an extension," 40 C.F.R. § 80.1441(e)(2)(iii)—i.e., the year immediately prior to the requested exemption year.

**REDACTED PUBLIC VERSION**

Although Petitioners agree the regulatory text is clear and unambiguous, they incorrectly assert that the regulation contains an implied, narrow exception from the two-year requirement.  They contend that a refinery can change eligibility criteria by merely waiting until the year immediately after the requested exemption year to petition, and then only demonstrate it meets the "small refinery" definition for one year, not two.  *See* Petr. Br. 31-32.  Petitioners erroneously focus on the first requirement of the 2014 Eligibility Regulation while disregarding the second requirement that a petition "project" eligibility for the subsequent year.  *See id.* at 32-33.  To properly interpret the 2014 Eligibility Regulation, it must be "read as a whole," not just in isolated pieces.  *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("Words are not pebbles in alien juxtaposition; they have only a communal existence[.]") (quotation omitted).  Petitioners disregard the complete text, instead focusing on the "prior year" requirement without discussing the complete text of the Regulation. *See* Petr. Br. 31-32 (omitting the "projection" language from each quotation of the Regulation).  To properly interpret the 2014 Eligibility Regulation, one must read the complete text, which contemplates that a

41

**REDACTED PUBLIC VERSION**

petition will estimate throughput for the requested exemption year. 40 C.F.R. § 80.1441(e)(2)(iii). Thus, "the year prior to seeking an extension" is the year immediately prior to when the projection is made—that is, the year prior to the requested exemption year.

Petitioners further assert that because EPA did not repeat language from the second requirement in the first requirement, it can't be read to mandate two years of data. *See* Petr. Br. at 32-33. But EPA did not need to repeat that language because, as discussed, the two eligibility requirements operate together and establish that the requested exemption year and the prior year are the relevant periods for eligibility. *See* 40 C.F.R. § 80.1441(e)(2)(iii).

Further, the history, purpose, and structure of the 2014 Eligibility Regulation support EPA's interpretation. *See Ramsingh v. TSA*, 40 F.4th 625, 634 (D.C. Cir. 2022) (reviewing the language and objectives set forth in a final rule's preamble when interpreting a regulation's text); *see also GMS Mine Repair*, 72 F.4th at 1322. The final rule preamble contemporaneously explained that the Regulation "places the focus on the time period *immediately prior to and during the desired exemption period*, which we believe is most appropriate given the

**REDACTED PUBLIC VERSION**

objectives of the provision." 79 Fed. Reg. at 42152 (emphasis added).

EPA further stated that the regulation was designed to "treat[]

refineries with similar performance the same." *Id.* And EPA also

explained that it would be inappropriate to consider distant years of

production when assessing eligibility for a particular year. *See id.* ("We

do not believe it would be appropriate to treat two refineries whose

recent operating conditions were equivalent differently if one refinery

exceeded 75,000 bpd in a single year as much as 8 years ago.").  EPA's

interpretation is not just consistent with the text of the 2014 Eligibility

Regulation; it is consistent with the interpretation announced in the

final rule preamble and achieves all the objectives detailed in that

preamble.

Conversely, Petitioners' interpretation not only contradicts the

preamble language, but it also leads to absurd results and undermines

the objectives of the 2014 Eligibility Regulation.  Petitioners'

interpretation creates a scenario where two *identically situated*

*refineries* can receive *different* eligibility decisions based solely on *when*

**REDACTED PUBLIC VERSION**

each party submits its exemption petition.[11]  Thus, Petitioners' reading

contradicts EPA's stated objective of treating similarly situated

refineries alike.  *See* 79 Fed. Reg. at 42152.  Further, in situations

where a refinery waits several years to apply, Petitioners'

interpretation would require EPA to consider crude oil throughput data

from several years *after* the requested exemption year, contrary to

EPA's objective that a refinery not be assessed based on its crude oil

throughput "as much as 8 years ago."  *See id.*

Critically, the very refineries at issue here have submitted

exemption petitions that adhere to *EPA's* interpretation, not

Petitioners'.  Just this past spring, when Petitioners sought an

exemption for 2024, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[11] For example, let's assume Refinery A and Refinery B have identical operating conditions, where both processed more than 75,000 bpd of crude oil in 2023, but less than 75,000 bpd in 2024.  Both Refineries petition for an exemption for the year 2024, but Refinery A applied during 2024, correctly projecting that it would process less than 75,000 bpd, and Refinery B waited until 2025 to apply.  Under Petitioners interpretation, EPA would correctly apply the 2014 Regulation to determine that Refinery A is ineligible but would deem Refinery B eligible solely based on Refinery B submitted its petition in 2025.

**REDACTED PUBLIC VERSION**

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████     In short, far from advancing

an interpretation that adheres more closely to the "plain language" of

the 2014 Eligibility Regulation and with how refineries have understood

the Regulation, Petitioners advance this interpretation here *for the first*

*time* simply because it suits their needs in the moment.  In contrast,

EPA's interpretation has been applied consistently to all petitioners and

treats similarly situated refiners alike.

---

12 ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

████    *See* RSA11.

**REDACTED PUBLIC VERSION**

Petitioners also argue that other language from the preamble discussing "the most recent full calendar year prior to an application for hardship" contradicts EPA's interpretation.  Petr. Br. 34 (quoting 79 Fed. Reg. at 42152).  Not so.  As discussed throughout this section of the brief, the "year" being referred to in the quoted language is the year prior to the requested exemption year because the regulation contemplates that "an application for hardship" is submitted during or prior to the requested exemption year.  *Supra* Argument II.A at 39-41.  And Petitioners' reference to the 2020 Wheeler Letter is likewise unavailing.  Petr. Br. 35.  The letter did not analyze or apply the 2014 Eligibility Regulation.  *See* EPA, *Letter from Andrew Wheeler, EPA Administrator, to Small Refineries* at 2 (Sept. 14, 2020), [https://perma.cc/UDU4-PVHR] (last visited Jan. 13, 2026).  And as the letter noted, EPA was dealing with multiple after-the-fact petitions (referred to in the letter as "gap-filling petitions") and denied them on *hardship* grounds, not for eligibility reasons.  *See id.* at 3-5.  Thus, the letter has no interpretive weight or relevance because EPA did not analyze how the text of the 2014 Eligibility Regulation should apply to an after-the-fact exemption petition.

**REDACTED PUBLIC VERSION**

Finally, beyond undermining the text and objectives of the 2014 Eligibility Regulation, Petitioners' interpretation renders the "prior year" requirement superfluous.  Even though the Regulation sets forth two distinct requirements and discusses two years of throughput, Petitioners' interpretation reduces this to one year and effectively allows a refinery to nullify half the Regulation solely by timing the submission of an exemption petition.  The Court should reject an interpretation that collapses the two requirements into one, rendering the text a "surplusage."  *See AT&T Corp. v. FCC*, 970 F.3d 344, 356 (D.C. Cir. 2020) (Katsas, J., concurring in part, dissenting in part) ("We should not tolerate a construction that creates such obvious and inexplicable surplusage.") (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

**B.      If the Court concludes that the 2014 Eligibility Regulation is "genuinely ambiguous," it should defer to EPA's longstanding interpretation.**

To the extent the Court disagrees that the text of the regulation is clear, it should at a minimum find that the 2014 Eligibility Regulation is genuinely ambiguous with respect to how it should apply to an after-the-fact exemption petition.  No party disagrees that the 2014

47

**REDACTED PUBLIC VERSION**

Eligibility Regulation is clear with respect to how it should apply to petitions submitted during and before the requested exemption year. *See* August 2025 Decisions at 8, JA019 (recognizing that the 2014 Eligibility Regulation was "written to apply" to this scenario).

Because the Regulation does not explicitly articulate how it should apply to an after-the-fact petition, the Court may find that the Regulation is susceptible to multiple interpretations and is therefore genuinely ambiguous. *See Kisor*, 588 U.S. at 566 (noting that a regulation may be genuinely ambiguous where it "may not directly or clearly address every issue."). If the Court finds that the regulation is genuinely ambiguous, it should defer to EPA's longstanding interpretation that the regulation requires a small refinery to show that it "processed no more than 75,000 bpd of crude oil in both the year for which the refinery requests an exemption and the prior year." June 2022 Denials at 21; *see also* 79 Fed. Reg. at 42152 ("The final rule places the focus on the time period immediately prior to and during the desired exemption period, which we believe is most appropriate given the objectives of the provision.").

**REDACTED PUBLIC VERSION**

EPA's interpretation is entitled to deference, first, because it is "reasonable" and "within the zone of ambiguity" established by an assessment of the Regulation's history and purpose. *See Kisor*, 588 U.S. at 575-76. The Regulation expressly sets forth two requirements that encompass two years, and requiring two consecutive years of data is consistent with the original purpose of that regulation. *See supra* Argument § II.A. Accordingly, EPA's reading falls "within the bounds of reasonable interpretation." *Kisor*, 588 U.S. at 576 (quoting *City of Arlington v. FCC*, 590 U.S. 290, 296 (2013)).

In addition, the "character and context" of EPA's interpretation "entitles it to controlling weight." *See id.* at 576 (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). EPA's interpretation was expressed in the final rule preamble to the 2014 Eligibility Regulation, *see* 79 Fed. Reg. at 42152, as well as subsequently in June 2022 when it applied the 2014 Eligibility Regulation consistent with this interpretation, June 2022 Denials at 21. Thus, this is indisputably EPA's "authoritative" and "official position" regarding the meaning of the 2014 Eligibility Regulation. *See Kisor*,

**REDACTED PUBLIC VERSION**

588 U.S. at 577; *see also GMS Mine Repair*, 72 F.4th at 1323-24 (deferring to interpretation set forth in regulation's preamble).

Further, EPA's interpretation "implicate[s] its substantive expertise." *See Kisor*, 588 U.S. at 577. Congress delegated EPA the exclusive authority to implement and oversee the RFS program, including the authority to implement regulations governing small refinery exemption petitions. *See* 42 U.S.C. § 7545(*o*)(2)(A)(i), (iii)(I). It does not matter, as Petitioners suggest, that the Court is capable of construing the phrasing in the 2014 Eligibility Regulation. Petr. Br. 34. Even "prosaic-seeming questions" can "commonly implicate [an agency's] policy expertise." *Kisor*, 588 U.S. at 578. Here, EPA's interpretation of the 2014 Eligibility Regulation implicates its policy expertise in implementing the RFS program. *See GMS Mine Repair*, 72 F.4th at 1324 (rejecting argument that this Court should not defer to agency on the question of imposing sanctions because "Congress did not give courts the authority to determine when and how to assess mine safety violations"); *see also Doe v. SEC*, 28 F.4th 1306, 1315 (D.C. Cir. 2022).

**REDACTED PUBLIC VERSION**

Finally, EPA's interpretation is entitled to deference because it represents the agency's "fair and considered judgment." *Kisor*, 588 U.S. at 579. EPA's interpretation, announced in the final rule preamble in 2014, and again when EPA applied this interpretation to deny a small refinery exemption petition in June 2022, is not "a merely 'convenient litigating position' or '*post hoc* rationalizatio[n] advanced' to 'defend past agency action against attack.'" *Id.* (quoting *Christopher*, 567 U.S. at 155) (alterations and emphasis in original). EPA's interpretation was announced long before any party challenged it and before Petitioners even applied for a 2024 exemption. And contrary to Petitioners' assertion otherwise, they have no credible concern of "unfair surprise" that counsels against deference here. *Contra* Petr. Br. 34. And as already discussed, the refineries have previously adhered to EPA's interpretation of the 2014 Eligibility Regulation in requesting exemptions for years other than 2024. *Supra* Argument II.A at 44-45. Even ignoring EPA's longstanding interpretation of the 2014 Eligibility Regulation, the refineries' adherence to the text of the Regulation belies any claim that Petitioners were "surprised" by the August 2025 Decisions.

**REDACTED PUBLIC VERSION**

## III.  The 2014 Eligibility Regulation is consistent with the Clean Air Act.

If the Court determines that it has jurisdiction to consider Petitioners' belated attack on the 2014 Eligibility Regulation, it should uphold the Regulation.  Petitioners essentially argue that the 2014 Regulation's criteria violate the CAA.[13]  Petr. Br. 24-25.  Thus, if the Court reaches that argument, it must determine whether EPA "acted within its statutory authority" in promulgating the 2014 Eligibility Regulation by exercising the Court's "own 'independent judgment,' using every interpretive tool at [its] disposal 'to determine the best reading of the statute.'"  *Cboe Global Markets v. SEC*, 155 F.4th 704, 713 (D.C. Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 400, 412).

Two statutory provisions are relevant here.  First, "small refineries" were initially exempt from the RFS program requirements and "may at any time petition [EPA] for an extension of the exemption under subparagraph (A) for the reason of disproportionate economic hardship."  42 U.S.C. § 7545(*o*)(9)(A), (B).  And second, a "small

---

[13] Although Petitioners state that EPA's "decisions" violate the CAA, *see* Petr. Br. 24, their argument must be construed as a challenge to the 2014 Eligibility Regulation's requirements, *see supra*, Argument I.B.

**REDACTED PUBLIC VERSION**

refinery" is defined as "a refinery for which the average aggregate daily crude oil throughput for a calendar year (as determined by dividing the aggregate throughput for the calendar year by the number of days in the calendar year) does not exceed 75,000 barrels." *Id.* § 7545(*o*)(1)(K).

When EPA promulgated the 2014 Eligibility Regulation, it acknowledged a gap in these statutory provisions. While the statute defines "small refinery" by its crude oil throughput for "a calendar year" and allows a "small refinery" to apply for an exemption, it does not specify which "calendar year" is relevant for purposes of determining eligibility under section 7545(*o*)(9)(B). *See* 79 Fed. Reg. at 42152. In its 2010 regulations, EPA "specified in the regulatory definition of 'small refinery' that the 75,000[-]bpd threshold determination should be calculated based on information from calendar year 2006," as EPA believed "having a single year in which to make this determination simplified the calculations and helped to ensure that all refineries were treated similarly." *Id.* However, EPA later determined that this approach was inconsistent with the statute's objective because it could have allowed refineries that "no longer meet the 75,000[-]bpd threshold" and were no longer small refineries to receive exemptions. *Id.*

**REDACTED PUBLIC VERSION**

EPA's approach in the 2014 Eligibility Regulation reflects the best reading of the statute. As the Supreme Court recognized in *HollyFrontier Cheyenne Refining v. Renewable Fuels Ass'n*, Congress sought to address the "special burdens on small refineries" that might result from the RFS program's requirements. 594 U.S. 382, 386 (2021). The 2014 Regulation furthers this goal by facilitating a petition for an exemption *before* a refinery incurs the "special burdens" caused by complying with the volume requirements for the requested exemption year. *See* 40 C.F.R. § 80.1441(e)(2)(iii) (requiring a refinery to "project" that it will fall below the crude oil throughput threshold in the requested exemption year). And by requiring a demonstration of a facility's "small refinery" status during the "prior year," the Regulation enforces the statute's express condition that only a "small refinery" will receive an exemption—i.e., that it demonstrably *is* a small refinery when it prospectively applies for an exemption.

This prospective reading of the statute is further supported by the text of the exemption provisions. Although subparagraph (B) allows a small refinery to petition for an exemption "at any time," the statutory text contemplates a petition that is submitted *before* a party has

54

**REDACTED PUBLIC VERSION**

complied with the volume requirements for a particular year.  To start, the term "exemption," as used in the statute, leaves unresolved what remedies a petitioner is afforded when it seeks an exemption *after* it has already complied with its RFS obligations.  *See Kern Oil & Refin. Co. v. EPA*, No. 21-71246, 2022 WL 3369528, at *1 (9th Cir. Aug. 16, 2022) (analyzing the term "exemption" and noting that, in contrast to the "self-actualizing" language of subparagraph A, the statute does not specify "what exact remedy the EPA must provide a refinery that receives [a subparagraph B] exemption after it has already complied").  Further, the statute directs EPA, in consultation with DOE, to assess whether compliance "would" impose an economic hardship on an entity.  *See* 42 U.S.C. § 7545(*o*)(9)(B)(ii), (A)(ii).  Considering Congress's goal to address the burdens on small refineries of having to comply with the RFS program, "would" is best understood in the hypothetical context— what happens *if* a refinery has to comply.  *See* Merriam-Webster's Collegiate Dictionary, (11th ed. 2005) ("to express probability or presumption in past or present time").  And subparagraph (B) mandates that EPA act on an exemption petition within 90 days, signaling that

**REDACTED PUBLIC VERSION**

prompt decision is warranted to advise a refinery whether it will be required to comply *before* it must submit a compliance demonstration.

Petitioners disagree, asserting that because the statutory definition only refers to "a calendar year," EPA is only authorized to look at one year of crude oil throughput data. Petr. Br. 24-25 (citing 42 U.S.C. § 7545(*o*)(1)(K)). But the 2014 Eligibility Regulation does not redefine what a "small refinery" is under § 7545(*o*)(1)(K); it implements the definition in the context of adjudicating small refinery exemption petitions under § 7545(*o*)(9)(B). *See* 40 C.F.R. § 80.1441(e)(2)(iii). By focusing exclusively on the statutory provision defining "small refinery," Petr. Br. 24-30, Petitioners fail to analyze § 7545(*o*)(9)(B) and explain what they contend is the "best reading" of that provision.

Conversely, EPA's regulation reflects the best reading of the statute because, under subparagraph (B), only a "small refinery" may seek an exemption, and the text is structured around a prospective petition. Accordingly, EPA's regulation correctly requires a refinery to show that it met the definition before it petitioned EPA and that it will meet the definition in the requested exemption year.

**REDACTED PUBLIC VERSION**

Petitioners' reliance on *HollyFrontier* is misplaced. The Court there only determined that EPA does not exceed its authority by granting exemptions to refineries that did not receive exemptions for every year since the inception of the RFS program. *See HollyFrontier*, 594 U.S. at 399-400. The Court did not have cause to address the question of whether EPA may require more than one year of data when implementing § 7545(*o*)(9)(B)(i). Further, the Court's example that Petitioners cite in their brief is inapposite. *See* Petr. Br. 29-30 (citing *HollyFrontier*, 594 U.S. at 393). The Court was providing an illustration of how the initial exemption provision under subclause (A)(ii)(II) would apply in a certain scenario, and using the example of (A)(ii)(II) to demonstrate that the word "extension" in subparagraphs (A) and (B) does not mean continuous without breaks since the inception of the extension. *See HollyFrontier*, 594 U.S. at 393-94. The Court was *not* addressing EPA's longstanding regulation requiring demonstration of data showing a refinery processed less than 75,000 bpd of crude oil in the requested exemption year and the prior year. Notably, as the Court there may have implicitly recognized, subclause (A)(ii)(II) is intrinsically tied to *a specific year* (2011) and the example

**REDACTED PUBLIC VERSION**

the Court provided was tailored to that provision.  *See* 42 U.S.C. §

7545(*o*)(9)(A)(ii)(II) (providing for an extension of the initial exemption

that concluded in 2011).  Subparagraph (B) is more flexible, allowing a

refinery to apply "at any time" and the 2014 Eligibility Regulation

properly implements that provision.  Thus, if the Court determines it

has jurisdiction to consider the validity of the 2014 Eligibility

Regulation, the Court should uphold the Regulation.

## IV.  Any remedy should not contradict the statutory timeframe for review of small refinery exemption petitions.

If this Court grants the petitions for review, it should decline to

impose any deadline and certainly should decline to impose any

deadline that provides less than the 90-day decision-making timeframe

for SRE petitions that Congress afforded EPA.  *See* 42 U.S.C.

§ 7545(*o*)(9)(B)(iii) ("The Administrator shall act on any petition

submitted by a small refinery for a hardship exemption not later than

90 days after the date of receipt of the petition.").

Congress determined that 90 days was the appropriate amount of

time for EPA to consider and act on SRE petitions, and the Court

should not cut short the statutory timeframe.  Petitioners' request that

this Court "direct EPA to decide petitioners' exemption petitions at least 21 days before the 2025 compliance deadline under the Renewable Fuel Standard," Petr. Br. 53, thus is improper.

To the extent Petitioners are concerned with an approaching compliance deadline, it is noteworthy that Petitioners waited until May 2025—over five months after the close of the 2024 year and availability of the last quarter of 2024 data—to petition for a 2024 exemption from their RFS compliance obligations. Petitioners are sophisticated parties that have long sought exemptions and are certainly aware that EPA would have 90 days to make a timely decision. Petitioners thus all but assured that if EPA issued an adverse decision, there would be little time for this Court to resolve the dispute before the next compliance deadline. The Court should not now order EPA to undertake an expedited and truncated reconsideration of those administrative petitions simply because Petitioners delayed beginning the administrative petition process.

## CONCLUSION

For the reasons set forth in this brief, the Court should deny the petitions for review.

59

**REDACTED PUBLIC VERSION**

Dated: January 15, 2026

Respectfully submitted,

/s/ *Alexander M. Purpuro*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney*
*General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

REDDING COFER CATES
ALEXANDER M. PURPURO
Environment and Natural Resources
Division
U.S. Department of Justice
Of Counsel:            Post Office Box 7611
SAMUEL STRICKLAND      Washington, D.C. 20044
*Attorneys*                (202) 353-5561 (Cates)
U.S. Environmental Protection   (202) 353-5230 (Purpuro)
Agency                 redding.cates@usdoj.gov
                       alexander.purpuro@usdoj.gov

60

**REDACTED PUBLIC VERSION**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,437 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

/s/ *Alexander M. Purpuro*
Alexander M. Purpuro

Counsel for Respondent