**Public Copy—Sealed Material Deleted**

ORAL ARGUMENT SCHEDULED MARCH 6, 2026

Nos. 25-1187 & 25-1197

# In the United States Court of Appeals for the District of Columbia Circuit

───────────────

ALON REFINING KROTZ SPRINGS, INC.,
*Petitioner,*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,
*Respondent.*

───────────────

HF SINCLAIR REFINING & MARKETING LLC AND
HF SINCLAIR PARCO REFINING LLC,
*Petitioners,*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,
*Respondent.*

───────────────

On Petition for Review of a Final Decision of the
Environmental Protection Agency, 90 Fed. Reg. 41,829 (Aug. 27, 2025)

───────────────

## JOINT REPLY BRIEF FOR PETITIONERS

───────────────

Allyson N. Ho
  *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
aho@gibsondunn.com

*Counsel for Petitioners*
*in No. 25-1197*

Daniel J. Feith
  *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner*
*in No. 25-1187*

(additional counsel listed on inside cover)

Christine M. Buzzard
Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

*Counsel for Petitioners*
*in No. 25-1197*

# TABLE OF CONTENTS

Table of Authorities ...................................................................ii

Glossary ...................................................................................vi

Summary of Argument .................................................................1

Argument ...................................................................................3

   I.  EPA wrongly determined that petitioners were ineligible for exemptions. ..........................................................................3

      A.  EPA's decisions violate the statute. ....................................3

      B.  EPA's decisions violate its regulation. ..................................6

   II.  The Court has jurisdiction over petitioners' challenges to EPA's August 2025 exemption denials. ......................................15

      A.  Petitioners seek review of EPA's 2025 denials—not its 2014 regulation. ...................................................................15

          1.  EPA's cases are inapposite. .............................................16

          2.  *McLaughlin* confirms that review is available. ...............19

          3.  The Due Process Clause requires review. ........................20

      B.  After-arising grounds independently render the challenges timely. ...........................................................23

          1.  EPA's about-face on the regulation's meaning is an after-arising legal development. .......................................24

          2.  Petitioners' change in throughput constitutes an after-arising factual development ......................................28

   III.  The Court should order EPA to do what is necessary to afford petitioners effective relief. ................................................32

Conclusion...............................................................................33

Certificate of Compliance ...................................................... C-1

Certificate of Service ............................................................. C-2

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Lung Ass'n v. EPA,*
   985 F.3d 914 (D.C. Cir. 2021) ...................................................28, 29, 30

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
   554 F. App'x 18 (D.C. Cir. 2014) ............................................ 18

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
   588 F.3d 1109 (D.C. Cir. 2009) ............................................ 20

*Am. Fuel & Petrochemical Mfrs. v. EPA,*
   937 F.3d 559 (D.C. Cir. 2019) ............................................ 19

*Balt. Gas & Electric Co. v. ICC,*
   672 F.2d 146 (D.C. Cir. 1982) ............................................ 31

*Coal. for Responsible Regul., Inc. v. EPA,*
   684 F.3d 102 (D.C. Cir. 2012) ............................................ 24

*Farrey v. Sanderfoot,*
   500 U.S. 291 (1991) ............................................ 7

*GMS Mine Repair v. Fed. Mine Safety & Health Rev. Comm'n,*
   72 F.4th 1314 (D.C. Cir. 2023) ............................................ 12

*Growth Energy v. EPA,*
   5 F.4th 1 (D.C. Cir. 2021) ............................................ 19

*Hanson v. District of Columbia,*
   120 F.4th 223 (D.C. Cir. 2024) ............................................ 6

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n,*
   594 U.S. 382 (2021) ............................................ 5

*Honeywell Int'l, Inc. v. EPA,*
   705 F.3d 470 (D.C. Cir. 2013) ............................................ 25

*Kisor v. Wilkie,*
    588 U.S. 558 (2019) ................................................................ 14, 15

*LaShawn A. v. Barry,*
    87 F.3d 1389 (D.C. Cir. 1996) ................................................ 23

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
    606 U.S. 146 (2025) ......................................... 19, 20, 22, 23

*Microsoft Corp. v. i4i L.P.,*
    564 U.S. 91 (2011) ................................................................ 10

*New York v. Meta Platforms, Inc.,*
    66 F.4th 288 (D.C. Cir. 2023) ................................................ 27

*Nat'l Wildlife Fed'n v. EPA,*
    286 F.3d 554 (D.C. Cir. 2002) ................................................ 12

*NRDC, Inc. v. EPA,*
    824 F.2d 1146 (D.C. Cir. 1987) .............................................. 16

*In re People's Mojahedin Org. of Iran,*
    680 F.3d 832 (D.C. Cir. 2012) ................................................ 33

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.,*
    758 F.3d 296 (D.C. Cir. 2014) ................................................ 23

*Ramsingh v. TSA,*
    40 F.4th 625 (D.C. Cir. 2022) ................................................ 12

*Saint Francis Med. Ctr. v. Azar,*
    894 F.3d 290 (D.C. Cir. 2018) ................................................ 13

*Sierra Club de P.R. v. EPA,*
    815 F.3d 22 (D.C. Cir. 2016) .................................................. 18

*Sinclair Wyo. Refin. Co. v. EPA,*
    114 F.4th 693 (D.C. Cir. 2024) .............................................. 17, 28, 32

*Toilet Goods Ass'n v. Gardner,*
    387 U.S. 158 (1967) .............................................................. 30

*In re United States*,
   143 F.4th 411 (D.C. Cir. 2025) ........................................................ 21

*United States v. Cook*,
   594 F.3d 883 (D.C. Cir. 2010) ........................................................ 10

*United States v. Turkette*,
   452 U.S. 576 (1981) ........................................................................ 10

## Statutes and Regulations

42 U.S.C. § 7545(*o*)(1)(K) ...................................................................... 3

42 U.S.C. § 7545(*o*)(9) ............................................................................ 6

42 U.S.C. § 7545(*o*)(9)(B) ............................................................... 3, 4, 9

40 C.F.R. § 80.1441(e)(2) ........................................................................ 9

40 C.F.R. § 80.1441(e)(2)(iii) ............................................................... 6, 8

79 Fed. Reg. 42,128 (July 18, 2014) .......................................... 12, 13, 25

## Other Authorities

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) ..................... 11

EPA-420-5-14-045
   (July 2014), tinyurl.com/4yxtca5c ................................................ 26

EPA, *www.epa.gov Snapshots*,
   tinyurl.com/mtr9fv52 (last visited Jan. 17, 2026) .......................... 26

EPA, *Letter from Andrew Wheeler, EPA Administrator, to Small
   Refineries* (Sep. 14, 2020), tinyurl.com/yccjnexs .......................... 26

EPA, *Renewable Fuel Standard Exemptions for Small Refineries*
   (Aug. 20, 2025), tinyurl.com/5dkjssk8 ........................................... 27

EPA, *Renewable Fuel Standard Exemptions for Small Refineries*
   (Aug. 23, 2025), tinyurl.com/5favps4d ........................................... 27

EPA, *Renewable Fuel Standard Exemptions for Small Refineries*
(Jan. 19, 2017), tinyurl.com/y875y9f3 ..........................................26, 27

EPA, *Renewable Fuel Standard Exemptions for Small Refineries*
(Jan. 19, 2021), tinyurl.com/mutxwb26 ......................................26, 27

EPA, *Renewable Fuel Standard Exemptions for Small Refineries*
(Jan. 19, 2025), tinyurl.com/58tncsdh..........................................26, 27

EPA, *RFS Small Refinery Exemptions*
(last updated Jan. 15, 2026), tinyurl.com/yeyka5bm ........................33

Gov't Accountability Off., *Renewable Fuel Standard*
(Nov. 3, 2022), tinyurl.com/e5t2cxzy ...................................................33

*Merriam-Webster Collegiate Dictionary* (11th ed. 2020)...........................7

# GLOSSARY

EPA                           Environmental Protection Agency

## SUMMARY OF ARGUMENT

By its plain text, the phrase "year prior to seeking an extension" of an exemption can mean only one thing: the year before a small refinery submits a petition to EPA requesting to extend its exemption. EPA doesn't articulate a single coherent reason "year prior to seeking an extension" means anything other than what it says, and it concedes that the Court has jurisdiction to resolve the case on this ground. That should be the end of the matter.

EPA's errors don't stop there, though. EPA violated the Clean Air Act when it held petitioners ineligible for small-refinery exemptions because they weren't below the throughput threshold for two consecutive years. EPA barely argues otherwise. It doesn't dispute that exemptions are available to a "small refinery"; that the Act defines that term based on throughput in "a calendar year"; that "a calendar year" means *one* calendar year; that this reading aligns with the Renewable Fuel Standard's overall one-year tempo; or that the Supreme Court has understood small-refinery status to turn on one year's throughput. The predominantly policy-based arguments EPA does offer can't overcome the Act's plain text.

Instead, EPA tries to shield its statutory violation behind a jurisdictional smokescreen. These cases, EPA insists, are merely "back-door challenges" to its 2014 regulation. But the only agency actions under review are EPA's August 2025 denials of petitioners' hardship applications, and EPA never disputes that the Court can hold those decisions unlawful simply by comparing them to the statute. None of this Court's cases supports EPA's attempt to recharacterize petitioners' challenges, while the Supreme Court's decision in *McLaughlin* and basic due process principles preclude it.

Regardless, after-arising grounds provide jurisdiction to review the 2014 regulation. EPA doesn't deny that an agency's newfound interpretation of its regulation can constitute after-arising grounds, and EPA's insistence that it has consistently interpreted the regulation ignores over a decade of public guidance in which EPA followed *petitioners'* reading of the regulation. EPA also doesn't deny that petitioners have an after-arising claim if a 2014 challenge wouldn't have been ripe. EPA insists that's not the case here, but it relies on a theory of ripeness with no basis in this Court's cases.

The Court should vacate EPA's denials.

## ARGUMENT

## I. EPA wrongly determined that petitioners were ineligible for exemptions.

### A. EPA's decisions violate the statute.

The Clean Air Act makes exemptions available to any qualifying "small refinery," meaning a refinery with average crude oil throughput below 75,000 barrels per day for "a calendar year." 42 U.S.C. § 7545(*o*)(1)(K), (*o*)(9)(B)(i). That phrase, the text surrounding it, the Renewable Fuel Standard's operation more broadly, and Supreme Court precedent all confirm that "a calendar year" means *one* calendar year. *See* Pets. Br. 24–30. EPA therefore violated the Act when it deemed petitioners ineligible for exemptions because they weren't below the throughput threshold for *two* calendar years. JA018.

EPA entirely ducks the central statutory interpretation question in these cases: whether "*a*" calendar year can mean ***two*** calendar years. Indeed, EPA fails to advance any argument that such a reading is plausible, let alone correct. *See* EPA Br. 52–58. Instead, EPA tries (at 53) to reframe the dispute as being about a statutory "gap"—namely, that the statute "does not specify which 'calendar year' is relevant for purposes of determining eligibility under section 7545(*o*)(9)(B)." But even assuming

3

that gap exists, it just means EPA may have discretion over which year—singular—to consider. It doesn't follow that "a calendar year" means *two* calendar years.

EPA also gets nowhere in arguing (at 54–55) that its eligibility regulation "furthers th[e] goal" of the small-refinery exemption "by facilitating a petition for an exemption *before* a refinery" must comply. Even assuming the statute has that goal, so what? EPA could "facilitat[e]" prospective petitions without requiring a refinery to be below the threshold for two years. It could, for example, look only at throughput for a single past year—as it did for the first decade of the program. *See* EPA Br. 7–8. Or, as in this case, where petitioners sought 2024 exemptions after that calendar year but well before that year's compliance deadline, SJA-AK3; SJA-HFS1, it could look at throughput only for the compliance year at issue. Either way, EPA's "prospective reading of the statute" (at 54) doesn't require construing *a* calendar year to mean *two*.

Moreover, EPA's premise isn't even correct. Prospective petitions aren't a "goal" of the statute because refineries may apply for an exemption "at any time." § 7545(*o*)(9)(B)(i). EPA can't justify mangling clear statutory text in service of an imaginary legislative goal.

4

Regardless, EPA's policy argument makes no sense. Its upshot is that exceeding the small-refinery threshold for *one* year makes a refinery ineligible for hardship relief for *two* years. Yet EPA never explains how this result is consistent with Congress's concern for the "special burdens on small refineries," *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 386 (2021), or the one-year tempo of the Renewable Fuel Standard more broadly, *see* Pets. Br. 27–28. Between clear statutory text and EPA's half-baked account of legislative purpose, the Court's analysis "can be guided only by the statute's text." *HollyFrontier*, 594 U.S. at 399.

EPA's remaining arguments are equally meritless. EPA accuses petitioners (at 56) of focusing on § 7545(*o*)(1)(K)'s definition of "small refinery" while "fail[ing] to analyze § 7545(*o*)(9)(B)." But the latter provision sets the hardship-exemption criteria, which include being a "small refinery" under the former provision. So the proper interpretation of the "small refinery" definition is central to whether EPA's decisions here violate the statute.

Nor can EPA sidestep *HollyFrontier*'s observation that a refinery could "move[] back into small refinery" status "[o]ne year" after losing it.

594 U.S. at 393. EPA emphasizes (at 57) that *HollyFrontier* "was *not* addressing" its two-year eligibility regulation, but it doesn't deny that the Court's observation was "carefully considered" and therefore "must be treated as authoritative," *Hanson v. District of Columbia*, 120 F.4th 223, 234 n.4 (D.C. Cir. 2024) (per curiam).

EPA also protests (at 57–58) that *HollyFrontier* applied the § 7545(*o*)(9)(A)(ii) exemption, which is "tied to a specific year," not the § 7545(*o*)(9)(B) exemption applicable here. But that's immaterial. Both (A)(ii) and (B) authorize an "extension" of an exemption for "a small refinery," § 7545(*o*)(9)—a status *HollyFrontier* understood as turning on one year's throughput, *see* 594 U.S. at 393. The contrary understanding EPA applied to petitioners violates the Clean Air Act.

## B.  EPA's decisions violate its regulation.

EPA's decisions also violate its eligibility regulation. All agree the regulation imposes "two conditions for eligibility," EPA Br. 12: a refinery must meet the "small refinery" definition "for the most recent full calendar year prior to seeking an extension" and "must be projected to meet" that definition "for the year or years for which an exemption is sought," 40 C.F.R. § 80.1441(e)(2)(iii). Petitioners satisfied both conditions. They

6

applied in 2025 for 2024 exemptions, so both "the most recent full calendar year prior to seeking an extension" and "the year … for which an exemption is sought" were 2024, when they undisputedly were "small." Pets. Br. 30–36.

**1.** EPA nevertheless insists (at 40) the regulation requires "satisfy[ing] the 'small refinery' definition for two consecutive years—the requested exemption year and the prior year." According to EPA, "the most recent full calendar year prior to seeking an extension" really means "the year immediately prior to the requested exemption year." EPA Br. 40.

The regulation's text forecloses that reading. "Seek" means to "request," *Merriam-Webster Collegiate Dictionary* 1124 (11th ed. 2020), and the gerund "seeking" refers to the "temporal event" of the refinery requesting the exemption, not the period for which that exemption is requested, *Farrey v. Sanderfoot*, 500 U.S. 291, 296 (1991). EPA's rewriting is simply not what the regulation says—a point driven home by EPA's need to change the regulatory text every time it describes its position. *See* EPA Br. 37, 39, 40, 42.

EPA doesn't dispute that its reading also ignores the differences between the first eligibility condition (the "year prior to seeking an

extension") and the second (the year "for which an exemption is sought") by construing "the most recent full calendar year prior to seeking an extension," 40 C.F.R. § 80.1441(e)(2)(iii), as "the most recent full calendar year prior to *the year for which an exemption is sought*," *see* Pets. Br. 32–33. Nor does EPA ever explain why the regulation would refer to distinct concepts—the act of "seeking an extension" and the "year … for which an exemption is sought"—had it meant to link both conditions to only the requested exemption year.

Furthermore, EPA's own brief belies its attempt to equate when a refinery "seek[s] an extension" with the year "for which an exemption is sought." EPA acknowledges (at 40) that a refinery may seek hardship relief "before"—*i.e.*, in a different year from—the requested exemption year.

Against all this, EPA's chief textual argument (at 40–42) is that: (1) the word "projected" in the second condition contemplates a petition received before or during the requested exemption year; therefore (2) "'the year prior to seeking an extension' is the year immediately prior to when the projection is made—that is, the year prior to the requested exemption year."

8

This argument is a *non sequitur*. Again, EPA concedes (at 40) that a petition may be "received before … the requested exemption year" (say, a 2023 application for a 2024 exemption). In that scenario, the year "prior to when the projection is made" would *not* be "the year prior to the requested exemption year" (2023); it'd be the year before that (2022). So even on its own terms, EPA's reading is incoherent.

EPA's reliance on the term "projected" also wrongly assumes that petitions must be "received before or during the requested exemption year." The statute says refineries may apply "at any time." § 7545(*o*)(9)(B)(i). So does EPA's regulation. 40 C.F.R. § 80.1441(e)(2). In fact, EPA guidance suggests refineries apply only once they have "three quarters of financial data" for the requested exemption year, effectively encouraging applications after that year concludes. JA012. EPA's reading says nothing about how the regulation applies in that situation.

For that reason, EPA's accusation (at 40–41) that petitioners "disregard[]" the word "projected" rings hollow. True, that term doesn't apply here because petitioners knew, and thus didn't need to "project[]," their 2024 throughput when they applied in 2025. But that doesn't make "projected" meaningless. Regulatory language "is not rendered

9

superfluous merely because in some contexts that language may not be pertinent." *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981). And regardless, "the canon against superfluity assists only where a competing interpretation gives effect" to the supposedly superfluous language. *Microsoft Corp. v. i4i L.P.*, 564 U.S. 91, 106 (2011). EPA doesn't dispute that refineries may apply for exemptions *after* the requested exemption year but offers no theory of what "projected" means in that situation.

For the same reason, EPA is wrong (at 47) that petitioners' interpretation "renders the 'prior year' requirement superfluous." Under petitioners' reading, the regulation requires two years of data when a refinery applies before, during, or more than one year after the requested exemption year. That leaves the "prior year" requirement plenty of work to do. *See Turkette*, 452 U.S. at 583 n.5.

**2.** With the plain text against it, EPA invokes the "absurd results" canon. But neither of EPA's purportedly "absurd" results meets the "high threshold" of "def[ying] rationality." *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010).

EPA complains (at 43–44) that petitioners' reading treats two similarly situated refineries differently based on when they apply. But a

10

refinery that applies before the end of the requested exemption year isn't similarly situated to one that applies after. EPA can be sure that the latter was "small" during the requested exemption period, whereas it must rely on projections for the former—projections that might rationally be informed by an earlier year's throughput.

EPA also protests (at 44) that petitioners' reading judges refineries on throughput "several years" distant from the requested exemption year. That doesn't "def[y] rationality" either—it's what EPA did for the first several years of the Renewable Fuel Standard. *See* EPA Br. 7–8. Regardless, EPA offers no reason that refineries, with tens of millions of dollars at stake, will routinely "wait[] several years to apply." *Id.* at 44.

Furthermore, absurd or not, these results are ones of EPA's own making. EPA chose (unlawfully) to use multiple years of data. It can't now invoke the absurdity canon to fix "substantive errors arising" from its own "failure to appreciate the effect of" its departure from the statute. Antonin Scalia & Bryan A. Garner, *Reading Law* 238 (2012).

**3.** EPA turns next (at 42–43) to preamble statements for support. But EPA doesn't dispute that when, as here, the regulatory text is "unambiguous," its meaning "cannot be controlled by language in the

11

preamble." *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 569–70 (D.C. Cir. 2002) (per curiam). The cases EPA cites (at 42) don't say otherwise. *Ramsingh v. TSA*, 40 F.4th 625, 632–34 (D.C. Cir. 2022), relied on a preamble to confirm, not override, regulatory text's ordinary meaning. And *GMS Mine Repair v. Federal Mine Safety & Health Review Commission*, 72 F.4th 1314, 1321–23 (D.C. Cir. 2023), consulted the preamble only after deeming the regulation genuinely ambiguous.

Regardless, the preamble statements EPA cites equally support petitioners. Petitioners' reading "treat[s] refineries with similar performance the same," 79 Fed. Reg. 42128, 42152 (July 18, 2014)—every refinery that applies in 2025 for a 2024 exemption will be judged based on its 2024 throughput. Petitioners' reading doesn't routinely require "consider[ing] distant years of production" when assessing eligibility, *contra* EPA Br. 43, because, given the stakes, refineries will rarely delay applying. And in many cases—those in which a refinery applies during the requested exemption year—petitioners' reading "places the focus on the time period immediately prior to and during the desired exemption period." 79 Fed. Reg. at 42152.

12

**Material Under Seal Deleted**

EPA also can't account for preamble statements contradicting its reading, such as the statement that the rule focuses on "the most recent full calendar year prior to *an application for hardship*." *Id.* (emphasis added); *see* Pets. Br. 33–34. Ultimately, these "mixed signals" in the preamble can't override the rule's plain text. *Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 297 (D.C. Cir. 2018).

**4.** It's irrelevant that petitioners "have submitted exemption petitions that adhere to EPA's interpretation." *Contra* EPA Br. 44–45 (emphasis omitted). EPA doesn't claim that conduct is somehow binding. Nor could it. Regulated parties can try to satisfy what they believe may be an agency's interpretation, even if they think it incorrect—especially when insisting on the correct interpretation wouldn't make a difference, as was the case in the two examples EPA cites. ████████████ ████████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████████████ ████████████ ████████████ ████████████ ████████████████████████████████████████ ████████████████████████ And the fact that Krotz Springs once

submitted *four* years of data, EPA Br. 44, says nothing about its understanding of whether the regulation requires *one* or *two* years of qualifying throughput. Petitioners' prior applications have no bearing on the proper interpretation of EPA's rule.

**5.** That just leaves EPA's plea for deference. EPA doesn't come close to showing deference is warranted.

Most important, EPA agrees (at 41) the rule is "unambiguous" and identifies no ambiguity in the everyday language of the first eligibility condition. *See Kisor v. Wilkie*, 588 U.S. 558, 573 (2019). Even if the rule were ambiguous, EPA's reading isn't "within the zone of ambiguity." *Id.* at 576. There's no world in which "year prior to seeking an extension," which turns on when a petition was filed, means "year prior to the year for which an exemption is sought," which turns on what a petition seeks.

EPA's reading doesn't implicate EPA's "substantive expertise" either. *Id.* at 577. EPA invokes (at 50) its "policy expertise in implementing the RFS program," but every agency regulation exists within some regulatory program, so invoking the program as a whole can't be enough. *Cf. Kisor*, 588 U.S. at 578 (giving examples). And EPA's reading doesn't "reflect 'fair and considered judgment.'" *Id.* at 579. With only one

14

exception, EPA has consistently followed *petitioners'* reading of the rule, right up until it announced the August 2025 decisions. *Infra* pp. 25–27. EPA merits no deference where it created "unfair surprise" to petitioners by adopting a new approach "'conflict[ing] with [its] prior' one." *Kisor*, 588 U.S. at 579.

## II. The Court has jurisdiction over petitioners' challenges to EPA's August 2025 exemption denials.

EPA concedes (at 1–2) the timeliness of petitioners' argument that the August 2025 denials violated EPA's 2014 regulation. *See* Pets. Br. 36–37. It disputes only the timeliness of petitioners' argument that the denials violate the Clean Air Act. But EPA is wrong twice over. Petitioners timely seek review of the 2025 denials, not the 2014 regulation. And even if these actions were challenging the 2014 regulation, they're timely because they're based on after-arising grounds.

### A. Petitioners seek review of EPA's 2025 denials—not its 2014 regulation.

EPA spends most of its brief mischaracterizing these cases as challenges to its 2014 regulation. But EPA doesn't dispute that petitioners seek to vacate only EPA's August 2025 decisions denying them exemptions—not the regulation. Nor does EPA contest that the Court can deem the 2025 denials unlawful simply by comparing them to the statute. So

15

neither "the substance" of petitioners' arguments nor "the relief requested" supports EPA's attempt to reframe these cases as "'back-door' challenge[s]" to the regulation. *NRDC v. EPA*, 824 F.2d 1146, 1150 (D.C. Cir. 1987) (en banc); *see* Pets. Br. 37–41.

EPA contends (at 19–22) that precedent nevertheless bars this Court from considering whether the denial decisions were inconsistent with the Clean Air Act. That argument fails for three reasons. First, EPA's authorities are inapposite by their terms. Second, the Supreme Court made clear in *McLaughlin* that judicial review is available in this context. And third, none of EPA's authorities addressed the fatal due process problems that would arise if judicial review were precluded here.

## 1.    EPA's cases are inapposite.

EPA's cited cases for the proposition that this Court can't consider whether EPA's decisions violate the statute are all off point.

*First*, EPA asserts (at 19–20) that *Sinclair Wyoming Refining Co. v. EPA*, 114 F.4th 693 (D.C. Cir. 2024) (per curiam), resolves this case, but EPA ignores the critical difference between the cases. In *Sinclair Wyoming*, a small refinery that was denied an exemption based on a different regulatory requirement asserted that if the regulation made them

16

ineligible, it was "contrary to the Act itself *and should be set aside*." Pets. Br. 95, Doc. 2035080, *Sinclair Wyo.*, No. 22-1073 (D.C. Cir. Jan. 9, 2024) (emphasis added).

EPA responded that petitioners' request to "set aside" the regulation made their attack untimely. EPA Br. 100, Doc. 2035130, *Sinclair Wyo.*, No. 22-1073 (D.C. Cir. Jan. 10, 2024). This Court agreed, concluding that it could not consider whether "the regulations … must be set aside." *Sinclair Wyo.*, 114 F.4th at 717.

By contrast, here EPA does not and cannot dispute that petitioners "don't seek vacatur of EPA's regulation." Pets. Br. 38.

*Second*, EPA tries and fails (at 20–22) to rehabilitate the *American Road & Transportation Builders Association* line of cases. It can't dispute that the association in those cases repeatedly sought to "vacate [EPA] regulations" (in *ARTBA I* and *II*) or "declare [them] invalid as applied" (in *ARTBA III*). *Am. Rd. & Transp. Builders Ass'n v. EPA*, 554 F. App'x 18, 19–20 (D.C. Cir. 2014); *see also Sierra Club de P.R. v. EPA*, 815 F.3d 22, 23 (D.C. Cir. 2016) (denying untimely request to "vacate" EPA regulation). Petitioners here aren't asking the Court to vacate the regulation or declare it invalid. EPA also can't deny that *ARTBA I* and *II*

"addressed the distinct issue" of parties attempting to smuggle a challenge to an old rule into a suit over EPA's later refusal to modify or rescind that rule.  Pets. Br. 42.

The *ARTBA* cases are also inapposite because they didn't involve an application of a regulation to the petitioner itself.  EPA counters that the association in those cases had to show standing to challenge the regulation.  But EPA can't deny that the association didn't have its rights adjudicated by the agency in the underlying proceedings.  That distinguishes it from petitioners here, who were denied exemptions giving rise to protected property interests under the Due Process Clause and so are entitled to as-applied review of those denials.  Pets. Br. 44; *see infra* § II.A.3.

*Third*, EPA's reliance (at 16, 22–23, 25) on *American Fuel & Petrochemical Manufacturers v. EPA*, 937 F.3d 559 (D.C. Cir. 2019) (per curiam), and *Growth Energy v. EPA*, 5 F.4th 1 (D.C. Cir. 2021) (per curiam), is equally misplaced.  Those cases reflect that where a new rule maintains a policy established in an earlier rule, a party can't challenge the earlier rule by seeking review of the new rule unless the agency has reopened the issue.  *Am. Fuel & Petro. Manufs.*, 937 F.3d at 585–86; *Growth*

18

*Energy*, 5 F.4th at 12–13.  That principle is irrelevant here because this case doesn't involve a new rule adhering to a policy established in the 2014 regulation.  Pets. Br. 44–45.

### 2. *McLaughlin* confirms that review is available.

Precluding consideration of petitioners' arguments would also be inconsistent with *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025).  *See* Pets. Br. 42–44.  EPA tries (at 23–24) to cabin *McLaughlin* to its facts, but the Supreme Court there relied on "[f]undamental principles of administrative law," including "the background presumption of judicial review," to recognize a "default" rule of permitting as-applied challenges unless Congress has clearly foreclosed such challenges.  606 U.S. at 155–57.

EPA emphasizes (at 24) *McLaughlin*'s observation that the Clean Air Act "expressly preclude[s] judicial review" in enforcement actions, but that only reinforces why judicial review is available here.  The Court's observation was based on § 7607(b)(2)'s restriction on challenging a rule's validity in enforcement proceedings—*not* on § 7607(b)(1).  *See McLaughlin*, 606 U.S. at 153–54.  EPA concedes (at 23) that these aren't enforcement actions, so § 7607(b)(2) has no role to play.  By contrast, nothing in

19

§ 7607(b)(1) "implie[s] any sort of limitation on the recognized ability of a party against whom a regulation is enforced to contest its validity in the enforcement context," *Am. Rd. & Transp. Builders Ass'n v. EPA*, 588 F.3d 1109, 1113 (D.C. Cir. 2009)—an observation that applies equally to non-enforcement proceedings like these.

The bottom line is that *McLaughlin* recognized a default rule that judicial review is available in as-applied contexts unless Congress has clearly said otherwise. The Clean Air Act doesn't clearly foreclose judicial review in non-enforcement actions like these. So petitioners are entitled to judicial review.

### 3.    The Due Process Clause requires review.

EPA's argument fails for yet another reason: It poses an insurmountable due process problem. Pets. Br. 43–44.

EPA doesn't dispute that small-refinery exemptions are statutory entitlements giving rise to property interests protected by the Due Process Clause—and so has forfeited any argument to the contrary. Pets. Br. 44; *see In re United States*, 143 F.4th 411, 431 (D.C. Cir. 2025). EPA admits (at 30) that "[d]ue process problems might arise 'if petitioners were denied [an exemption] without any opportunity to challenge the

20

basis of the denial.'" And EPA doesn't deny that those due process problems would justify construing § 7607(b)(1) to permit judicial review. Pets. Br. 44.

EPA instead contends (at 30–31) that due process is satisfied because petitioners (1) could have challenged the regulation in 2014, and (2) can petition EPA to rescind the regulation and seek judicial review from that petition's denial. But the Supreme Court has already considered and rejected the government's assurances that pre-enforcement review and petitions for rulemaking are adequate substitutes for judicial review in enforcement actions: *McLaughlin* explained that it "would be highly unusual—and would rightly strike many affected parties as grossly unfair"—if parties potentially affected by a new regulation were required "to somehow predict the future" and sue within 60 days, lest they forever "lose their right" to challenge the rule in enforcement proceedings. 606 U.S. at 158. That unfairness would trigger "significant questions under the Due Process Clause." *Id.* at 158 n.5.

*McLaughlin* also rejected the government's argument that "judicial review is not necessary … because an affected party who did not bring a pre-enforcement challenge can always petition the agency for a new

21

rulemaking." *Id.* at 167. Review of denied rulemaking petitions isn't always "available," "may take many years," and is subject to a deferential standard of review, so it isn't an adequate substitute for review in enforcement actions. *Id.*

*McLaughlin*'s reasoning applies with equal force here, even though this case doesn't involve an enforcement proceeding. EPA doesn't dispute that the denial of an exemption implicates protected interests under the Due Process Clause, just as an enforcement proceeding does. Pets. Br. 44. Interpreting § 7607(b)(1) to foreclose judicial review in as-applied contexts like this would violate due process by denying petitioners any adequate means to challenge the deprivation of those interests. *See Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014). To "avoid th[ose] due process concerns," the Court should interpret § 7607(b)(1) to "allow[] judicial review of agency legal interpretations" in this as-applied posture. *McLaughlin*, 608 U.S. at 158 n.5.

The due process problems with EPA's position are yet another reason its cited authorities are inapposite. None of those cases addressed—much less resolved—the serious due process problems that would arise if § 7607(b)(1) were construed to prevent parties like petitioners from

obtaining judicial review of EPA's denials of their exemption petitions. Pets. Br. 43–44. So the due process question remains open. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 n.7 (D.C. Cir. 1996) (en banc). It's squarely presented here—and requires interpreting § 7607(b)(1) to allow for judicial review of petitioners' argument that EPA's denial decisions violate the Clean Air Act.

*    *    *

Ultimately, EPA's position is that if no one objects within 60 days, it can forever wield authority beyond that conferred by Congress. EPA cites no precedent allowing it to seize power by adverse possession, and there is none.

## B. After-arising grounds independently render the challenges timely.

This Court has repeatedly "assured petitioners with unripe claims" that § 7607(b)(1) will not foreclose "judicial review when the appropriate time comes." *Coal. for Responsible Regul., Inc. v. EPA*, 684 F.3d 102, 131 (D.C. Cir. 2012) (per curiam) (citation omitted). Even if the petitions were properly construed as challenges to the 2014 regulation, the Court's assurance was made for times like this. EPA ignores the mountain of evidence that it originally interpreted the regulation exactly as

23

petitioners do—until EPA reversed course and adopted a reading that necessarily conflicts with the statute. Moreover, petitioners had no ripe challenge to the regulation until it first caused them to be deemed ineligible based on a different year's throughput.

> **1. EPA's about-face on the regulation's meaning is an after-arising legal development.**

EPA doesn't dispute that under this Court's precedents, an agency's shift in its interpretation of a regulation can constitute a "change[]" in "the legal landscape" providing after-arising jurisdiction. *Honeywell Int'l, Inc. v. EPA*, 705 F.3d 470, 473 (D.C. Cir. 2013). EPA did just that when it denied petitioners' exemptions in reliance on a reading of its regulation that it had previously rejected and that conflicts with the Clean Air Act in all applications, making review timely here.

EPA's primary response (at 32) is that it has always interpreted the 2014 regulation as it did in the August 2025 decisions. The record shows otherwise.

EPA insists that the regulation's preamble made its current interpretation clear, but it can't dispute (and therefore ignores) that the preamble explained that the regulation "require[s] that throughput be no greater than 75,000 barrels in the most recent full calendar year *prior to*

24

*an application for hardship*"—just as the regulation's plain text states. 79 Fed. Reg. at 42152 (emphasis added). And EPA can't deny that the 2020 letter its Administrator wrote to small refineries advanced the same understanding, explaining that the 2014 regulation focused on throughput "during the desired exemption period and *the year immediately preceding the petition.*" EPA, *Letter from Andrew Wheeler, EPA Administrator, to Small Refineries* 2 (Sep. 14, 2020), tinyurl.com/yccjnexs (emphasis added).

That's just the tip of the iceberg. EPA endorsed petitioners' interpretation *until the day it issued the August 2025 denials*. In EPA's 2014 Fact Sheet for the regulation, published the same month EPA promulgated the regulation in the Federal Register, the agency explained that it was "modifying the definition of small refinery so that the crude throughput threshold … must apply in the *most recent full calendar year prior to an application for hardship*." EPA-420-5-14-045 at 2 (July 2014), tinyurl.com/4yxtca5c (emphasis added).

25

The same understanding appears in EPA "snapshots" of its website from 2017, 2021, and *even 2025*.[1]  In each version, EPA's overview of small-refinery exemptions stated that refineries must not exceed the throughput threshold "in the most recent full calendar year prior to submitting a petition" or the year of the requested exemption.[2]  Moreover, EPA kept this definition posted until at least August 20, 2025, with the supposedly "longstanding" definition that EPA now champions (at 13, 37) first appearing sometime between then and August 23—the day after EPA announced its denial decisions.[3]

---

[1] EPA, *www.epa.gov Snapshots*, tinyurl.com/mtr9fv52 (last visited Jan. 17, 2026).

[2] EPA, *Renewable Fuel Standard Exemptions for Small Refineries*, tinyurl.com/y875y9f3 (archive of Jan. 19, 2017); EPA, *Renewable Fuel Standard Exemptions for Small Refineries*, tinyurl.com/mutxwb26 (archive of Jan. 19, 2021); EPA, *Renewable Fuel Standard Exemptions for Small Refineries*, tinyurl.com/58tncsdh (archive of Jan. 19, 2025).

[3] *Compare* EPA, *Renewable Fuel Standard Exemptions for Small Refineries*, tinyurl.com/5dkjssk8 (archive of Aug. 20, 2025 from Internet Archive's Wayback Machine), *with* EPA, *Renewable Fuel Standard Exemptions for Small Refineries*, tinyurl.com/5favps4d (archive of Aug. 23, 2025 from Internet Archive's Wayback Machine); *see New York v. Meta Platforms, Inc.*, 66 F.4th 288, 303 (D.C. Cir. 2023) ("The 'contents of webpages available through the Wayback Machine' constitute 'facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'") (citation omitted).

Against this evidence, EPA musters (at 33–34) only a solitary instance of the agency taking its current view of the 2014 regulation before these denials.  But petitioners weren't part of the 2022 exemption decision EPA invokes, and EPA doesn't dispute that petitioners couldn't have challenged its interpretation of the regulation then.  So EPA's 2022 decision is irrelevant.  And any challenge to the agency's current interpretation of its regulation in 2014 would have been "too speculative to support judicial review" given petitioners' reasonable reliance on the regulation's plain language and EPA's repeated endorsement of the interpretation it now abandons.  *Am. Lung Ass'n v. EPA*, 985 F.3d 914, 973–74 (D.C. Cir. 2021) (per curiam) (cleaned up), *rev'd and remanded on other grounds sub nom. West Virginia v. EPA*, 597 U.S. 697 (2022).

*Sinclair Wyoming* doesn't help EPA escape the consequences of its about-face.  *Contra* EPA Br. 34–35.  There, EPA's interpretation of the challenged regulation never wavered.  114 F.4th at 717–18.  Here, EPA changed its mind, creating a conflict with the statute that wasn't always present under the agency's former reading.  *See* Pets. Br. 52.  Moreover, EPA's change in interpretation cost petitioners exemptions they would have received under EPA's former reading—which wasn't the case in

27

*Sinclair Wyoming*.  *See Honeywell*, 705 F.3d at 473.  Both differences show why EPA's new interpretation constitutes an after-arising ground providing jurisdiction to consider the regulation's inconsistency with the Clean Air Act.

It would be perverse to permanently insulate the 2014 regulation from judicial review when EPA has only now announced that it won't be interpreting that regulation the way it said it would for years.  Indeed, at almost the same time EPA was issuing the August 2025 exemption denials, it was scrambling to scrub its website of the same interpretation it accuses petitioners of "offer[ing] for the first time in this litigation." EPA Br. 36; *see supra* pp. 26–27.  When an agency ambushes regulated parties with a newfangled interpretation of a regulation, there is an after-arising legal ground to challenge that interpretation's consistency with the statute.  Any other rule would reward agency gamesmanship.

## 2. Petitioners' change in throughput constitutes an after-arising factual development.

This Court also has jurisdiction over any challenge because EPA's denial of petitioners' 2024 exemptions based on the refineries' increase in throughput in 2023 marked the first time since 2014 that petitioners were deemed ineligible for an exemption based on a *different* year's

throughput.  Petitioners have an after-arising claim so long as, in a hypothetical challenge in 2014, their standing "would have been in doubt" or if their injury "might well have been too speculative to support judicial review." *Am. Lung Ass'n*, 985 F.3d at 973–74.  Just so here.

To start, EPA misstates (at 29) the relevant standard, asserting that petitioners had a ripe claim in 2014 if it was "foreseeable" how EPA might one day apply the regulation.  EPA doesn't say where it gets that standard—and this Court's precedents are to the contrary.  A ripe claim requires a petitioner to be "concretely aggrieved" by the agency's action. *Am. Lung Ass'n*, 985 F.3d at 973.  Even assuming it was foreseeable in 2014 that EPA might one day interpret the regulation as it does now— hardly a given considering EPA's contemporaneous explanation of the regulation, *see supra* pp. 25–27—petitioners' injuries didn't become concrete until EPA's interpretation cost them their exemptions.

EPA contends (at 26–27) that an earlier challenge would have been timely because the regulation requires petitioners to submit an extra year of throughput data.  But courts decline to hear "generalized" pre-enforcement challenges to regulations when the regulations don't affect parties' "primary conduct" and there would be "minimal, if any, adverse

consequences" for parties to wait until a fact-bound controversy. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164–66 (1967). Paperwork with no impact on any exemption wouldn't have given petitioners a ripe claim in 2014.

EPA attempts (at 31) to distinguish *Baltimore Gas & Electric Co. v. ICC*, 672 F.2d 146 (D.C. Cir. 1982), on the ground that the petitioner there supposedly had "no obligation" under the challenged rule, but that misses the mark. There, as here, the petitioner was subject to an agency's statutory interpretation that the petitioner believed was invalid. *Id.* at 148. But that alone wasn't enough for a ripe claim. There needed to be "a fact-based controversy" centered on "concrete" effects of that interpretation. *Id.* at 147–48.

EPA contends (at 27–28) that petitioners had grounds to challenge the 2014 regulation simply by virtue of being subject to it, but petitioners had no concrete controversy with the regulation until it caused the loss of their exemptions. Any challenge before then would have depended on speculation about how petitioners' throughput *might* change in the future—the same problem that precluded ripeness in *Baltimore Gas*. *See* 672 F.2d at 148 (claim unripe because it involved "a hypothetical state of

affairs" based on the possibility that petitioner "should … some day fall within" the challenged provision).

EPA's assertion (at 29–30) that *Sinclair Wyoming* demonstrates the unavailability of an after-arising factual ground is unsupported.  There, Company A was subject to a regulation requiring a small refinery to submit a verification letter to qualify for an exemption beginning in 2007. *Sinclair Wyo.*, 114 F.4th at 717.  The Court suggested that Company A "could have brought an after-arising claim" when its throughput first fell below the small-refinery threshold in 2008, at which point the challenged regulation became the only barrier between Company A and eligibility for the exemption.  *Id.*

The same logic shows why petitioners' challenges are timely here. Although petitioners were subject to the regulation in 2014, it wasn't until EPA's adjudication of their petitions for 2024 exemptions that either refinery could have been deemed ineligible based on a different year's throughput.  Holding that petitioners should have challenged the regulation in 2014 would mean that regulated parties must challenge regulations with which they have no foreseeable quarrel or else have the courthouse doors forever shut.  The law doesn't require that senseless result.

## III.  The Court should order EPA to do what is necessary to afford petitioners effective relief.

EPA concludes (at 58–59) by urging the Court not to set any particular deadline for EPA on remand—even if that means petitioners get no effective relief, and even if that means nullifying this Court's decision to expedite these cases.  The Court should reject that request.

EPA doesn't claim this Court lacks the authority to order EPA to decide petitioners' exemption petitions by a date certain on remand, even if that date is fewer than 90 days from the Court's mandate.  The Court has done that before.  *See, e.g.*, *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 838 (D.C. Cir. 2012) (per curiam) (imposing four-month deadline on remand where statute gave agency six months).  It can do so again here.

The only reason EPA says (at 59) the Court shouldn't do so is that "Petitioners delayed beginning the administrative petition process."  That's a bold claim coming from the agency that "has routinely missed the 90-day statutory deadline for issuing exemption decisions and does not have procedures to ensure that it meets these deadlines."  U.S. Gov't Accountability Off., *Renewable Fuel Standard* (Nov. 3, 2022), tinyurl.com/e5t2cxzy.  Bolder still considering EPA's own data shows it

wouldn't have mattered whether petitioners applied earlier—even refineries that applied for their 2024 exemption *in 2023* didn't get a decision until August 2025 at the earliest. *See* EPA, *RFS Small Refinery Exemptions* Table SRE-3 (last updated Jan. 15, 2026), tinyurl.com/yeyka5bm (filter by 2024 compliance year).

The truth is that petitioners have done everything in their power to expedite these cases. *See* Mot. to Expedite, Doc. 2135663 (Sep. 18, 2025); Opp'n to EPA's Mot. to Hold Case in Abeyance, Doc. 2138249 (Oct. 1, 2025); Joint Proposed Briefing Order, Doc. 2148509 (Dec. 3, 2025). EPA, by contrast, has sought delay at every turn. *See, e.g.*, Mot. to Hold Case in Abeyance, Doc. 2138117 (Oct. 1, 2025); Opp'n to Mot. to Expedite, Doc. 2140636 (Oct. 16, 2025). Meanwhile, in the months these cases have been pending, EPA could have reviewed petitioners' applications on their merits and reached a presumptive disposition in the event of a remand. But evidently, it has chosen inaction. If EPA is feeling squeezed for time, it has only itself to blame.

## CONCLUSION

The Court should vacate EPA's decisions, remand for EPA to consider petitioners' exemption applications on their merits, and order EPA

to make those decisions at least 21 days before the 2025 compliance dead-

line.

Dated: January 27, 2026                    Respectfully submitted,

*/s/ Allyson N. Ho*                         */s/ Daniel J. Feith*
Allyson N. Ho                               Daniel J. Feith
   *Counsel of Record*          *Counsel of Record*
Stephen J. Hammer                           Peter C. Whitfield
Robert W. Frey                              Peter A. Bruland
GIBSON, DUNN & CRUTCHER LLP                 Cody M. Akins
2001 Ross Avenue, Suite 2100                SIDLEY AUSTIN LLP
Dallas, TX 75201                            1501 K Street, NW
(214) 698-3100                              Washington, DC 20005
aho@gibsondunn.com                          (202) 736-8000
                                            dfeith@sidley.com
Christine M. Buzzard
Lavi M. Ben Dor                             *Counsel for Petitioner*
M. Christian Talley                         *in No. 25-1187*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

*Counsel for Petitioners*
*in No. 25-1197*

34

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

This brief complies with the type-volume requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,500 words, not counting the parts excluded by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

*/s/ Daniel J. Feith*
Daniel J. Feith

## CERTIFICATE OF SERVICE

I certify that on January 27, 2026, a copy of the public version of this document was electronically filed with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.  I further certify that on January 27, 2026, a copy of the sealed version of this document was electronically filed with the Clerk of Court using the Court's Box.com repository for sealed filings.  A copy of the sealed version of this document will be sent via email to counsel for respondent pursuant to counsel for respondent's written consent to service via email.

*/s/ Daniel J. Feith*
Daniel J. Feith